Shoham J. Solouki (SBN 278538)
SOLOUKI SAVOY LLP
316 West 2nd Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550
Email: shoham@soloukisavoy.com

*Attorneys for Daniel Draney and the*
*Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| Daniel Draney, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-1405 |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| Westco Chemicals, Inc.; Ezekiel "Alan" Zwillinger; and Steven Zwillinger, | Demand for Jury Trial |
| Defendants. | |

## INTRODUCTION

1. Daniel Draney ("Plaintiff") for himself and on behalf of the: (1) Westco Chemicals, Inc. Profit Sharing 401(k) Plan ("401(k) Plan") and (2) Westco Chemicals Defined Benefit Pension Plan ("Pension Plan") (collectively, the "Plans"), and as a representative of participants and beneficiaries of the Plans, brings this action against Westco Chemicals, Inc., Ezekiel "Alan" Zwillinger, and Steven Zwillinger (collectively, "Defendants") for violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA").

2.  The 401(k) Plan is an individual account, defined contribution pension plan

3.  The Pension Plan is a defined benefit pension plan.

4.  Both Plans are subject to the terms of the Employee Retirement Income Security Act of 1974 ("ERISA").

5.  The term "individual account plan" or "defined contribution plan" means a pension plan which provides for an individual account for each participant and whose benefits are based solely on the sum of contributions to the participant's account, adjusted for any income, expenses, gains and losses, attributed to such participant's account.   In other words, the investment risk with respect to the investment of contributions is borne by the participant.

6.  In contrast, a defined benefit pension plan provides a specific monthly retirement benefit for the participant's life after retirement.  The employer-sponsor of the defined benefit plan is obligated to contribute to the plan whatever is required to ensure that the specific amount of the benefit can be paid.   In other words, the investment risk with respect the investment of plan contributions is borne by the employer.

7.  Those individuals who either have or exercise discretionary authority over the investment of plans assets, and those charged with administering the terms of the Plans are fiduciaries to the Plans and their participants.

8.  ERISA fiduciaries must:

    (a)    Act solely in the interest of plan participants and their beneficiaries and with the exclusive purpose of providing benefits to them;

    (b)    Carry out their duties prudently;

    (c)    Follow the plan documents (unless inconsistent with ERISA);

    (d)    Diversify plan investments; and

(e)   Pay only reasonable plan expenses.[1]

9. The ERISA duties of loyalty and prudence are among "the highest known to the law" and require fiduciaries to have an eye single to the interests of plan participants and beneficiaries. *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

10. Every fiduciary responsible for investing plan assets will be held to the standard of a prudent investment professional; the so-called prudent expert. *Whitfield v. Cohen*, 682 F. Supp. 188, 194 (S.D.N.Y. 1984) (cited with approval in *Tibble v. Edison International*, 2017 WL 3523737 at *10).

11. Defendants have breached their ERISA duties in an egregious and dizzying array of ways. As detailed below, Defendants breaches include, but are not limited to:

(a)   Failing to provide participants with statutorily required disclosures about the Plans' terms, holdings, investments, fees, and performance;

(b)   Failing to provide to Plan documents to Plaintiff after repeated requests;

(c)   Failing to fund the Plans as required by law;

(d)   Failing to follow the terms of the Plans' by forfeiting participant accounts that should have otherwise been 100% vested;

(e)   Failing to hire professionals to manage or to assist in the management of the Plans and the investment of Plans' assets;

(f)   Failing to prudently invest the Plans' assets as would a reasonable fiduciary;

---

[1] ERISA § 404(a), 29 U.S.C. 1104(a); *see also,* DOL Publication "Meeting Your Fiduciary Responsibilities"; available at *https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf*; last viewed Feb 11, 2019.

(g)     Failing to provide the 401(k) Plan participants with adequate and prudent investment options;

(h)     Investing the Plans' assets in a manner designed to benefit the individual defendants to the detriment of Plan participants by causing the 401(k) Plan to invest all of its assets in certificates of deposit;

(i)     Comingling the Plans' assets with Defendants' assets;

(j)     Failing to regularly monitor investment performance and replace poorly performing investments;

(k)     Causing the Plans to engage in prohibited transactions.

**JURISDICTION AND VENUE**

12. Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and (3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b), because the Defendants reside or may be found in this District and because the Plans are administered in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**PARTIES**

14. Plaintiff Daniel Draney is a California citizen. He resides in Montrose, California. Plaintiff is now, and at all relevant times, has been a participant in the Plans.

15. Defendant Westco is a California corporation with its principal place of business in the City of North Hollywood, California. Westco is a privately held family business. Westco is the Plans' sponsor and thus is a "named fiduciary" under 29

-4-

U.S.C. §1002(16)(B) who has authority to control and manage the administration of the Plans. Westco also possesses or exercises certain types of authority, responsibility, or control over the Plans and thus is a functional fiduciary under 29 U.S.C. §1002(21)(A). Westco is also a party in interest to the Plans under 29 U.S.C. §1002(14).

16. Defendant Ezekiel "Alan" Zwillinger is the current (or former) President of Westco. Ezekiel Zwillinger resides in Calabasas, California. He has been the control person for Westco since the 1960's and is/was in control of the creation and administration of the Plans. Ezekiel Zwillinger spurned hiring an investment manager for the Plans. Instead he designated himself to make all the investment decisions for the Plans and he kept absolute control over the Plans' assets. In addition, Ezekiel Zwillinger held himself as the Plans' Trustee to the Plans' participants. Accordingly, Ezekiel Zwillinger is a "named fiduciary" under 29 U.S.C. §1102(a)(1), because he has authority to control and manage the administration of the Plans. Ezekiel Zwillinger also possesses or exercises certain types of authority, responsibility, or control over the Plans and the investment of plan assets and thus is a functional fiduciary under 29 U.S.C. §1002(21)(A). Ezekiel Zwillinger is also a party in interest to the Plans under 29 U.S.C. §1002(14).

17. Defendant Steven Zwillinger is the son of Ezekiel Zwillinger. Steven Zwillinger resides in Encino, California. Steven Zwillinger is the second in command at Westco. However, over the past ten years, Steven Zwillinger has taken more and more responsibility at Westco as his father moves toward retirement. Since at least 2013, Steven Zwillinger has signed the Plans' form 5500-SF Department of Labor mandated disclosures as the Plans "administrator." In addition, he currently holds himself out as the Plans' Trustee to the Plans' participants. Steven Zwillinger makes investment decisions for the Plans and exercises control over the Plans' assets. Accordingly, Steven Zwillinger is a "named fiduciary" under 29 U.S.C. § 1102(a)(1),

1  because he has authority to control and manage the administration of the Plans. He
2  also possesses or exercises certain types of authority, responsibility, or control over the
3  Plans and thus is a functional fiduciary under 29 U.S.C. § 1002(21)(A). He is also a
4  party in interest to the Plans under 29 U.S.C. § 1002(14).

5                      **NATURE OF THE ACTION**

6       **The 401(k) Plan**

7       18. The 401(k) Plan is an "employee pension benefit plan" within the meaning
8  of 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of 29
9  U.S.C. § 1002(34).

10      19. ERISA requires plan administrators to give plan participants on an annual
11 basis in writing the most important facts they need to know about their retirement
12 benefit plans, including plan investment rules; financial information; and documents
13 on the operation and management of the plan at large. These disclosures are required
14 to be in what is known as the "summary plan description," that includes a description
15 of the essential terms of the plan and that "shall be written in a manner calculated to be
16 understood by the average plan participant, and shall be sufficiently accurate and
17 comprehensive to reasonably apprise such participants and beneficiaries of their rights
18 and obligations under the plan.[2] Defendants provided to Plaintiff, a summary plan
19 description for the 401(k) Plan failed to provide Plaintiff with a summary plan
20 description on an annual basis. The last summary plan description that Defendants
21 provided to Plaintiff is dated October 1, 2005.

22      20. ERISA requires that a qualified retirement plan must be "established and
23 maintained pursuant to a written instrument" called the plan document.  On multiple
24 occasions, Plaintiff Draney requested a copy of the Plan document but such a
25 document was never provided to Plaintiff by Defendants. Defendants' failure to
26

27 [2] ERISA § 102(a), 29 U.S.C. § 1022(a).

-6-

provide Plaintiff with a plan document is further evidence that Defendants are imprudently managing the 401(k) Plan. Defendants' failure to provide plan document upon request is a violation of ERISA § 104(b)(4), 29 U.S.C. 1024(b)(4).

21. Defendants are required to file annual returns on Form 5500 concerning the 401(k) Plan with the Employee Benefits Security Administration ("EBSA") of the U.S. Department of Labor ("DOL"). Defendants, however, have not filed the required annual returns for the 401(k) Plan since 2013.

22. Defendants are required by ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3) to provide Plan participants with a summary of the annual return, the "summary annual report" annually, with financial information on the Plan's holdings, performance, expenses, and other financial information. This is critical information. Defendants, however, have not provided participants with a summary annual report since 2012. Defendants' failure to provide participants with annual reports is further evidence that Defendants' are imprudently managing the 401(k) Plan. It is also strong evidence that Defendants' are operating the Plans for their personal interest and not for the interests of the participants. Defendants are not even disclosing fundamental information about the Plans to participants, but they are in possession of this information and using it for their collective personal benefit.

23. Defendants' failure to provide mandatory disclosures to participants that are critical to participants' understanding of their rights and benefits under the Plans was intended to conceal from participants Defendants' wrongdoing.  The annual report that Defendants last disclosed is dated September 30, 2013 and revealed that the value of 401(k) Plan assets as of September 30, 2013 was $4,479,611 and the 401(k) Plan earnings from investments were just $34,686, which amounts to a dismal return on investment of just 0.77% for the reporting year. The average return on investments made through similar sized 401(k) plans in the same period was over 10.6%.

24. Additionally, the annual report revealed why the performance was so bad.

1    The 401(k) Plan was/is invested only in certificates of deposit. Many of these
2    certificates of deposit are in banks overseas, like India, and provide an annual return of
3    less than 1%. Defendants' failure to properly construct an investment platform, or to
4    diversify the 401(k) Plan's investment holdings, and to review and monitor poorly
5    performing investments, is a *per se* violation of ERISA's duty of prudence. ERISA §
6    404 expressly requires a fiduciary to diversify the investments of the <u>plan</u> so as to
7    minimize the risk of large losses, unless under the circumstances it is clearly prudent
8    not to do so.  The violation has cost 401(k) Plan participants more than $1 million over
9    the relevant time period.

10       25. Additionally, investments in certificates of deposit issued by foreign banks
11   violated the 401(k) Plan document rules because the Plan rules prohibit investments in
12   products offered by foreign banks. The Plan document also requires that the Plan's
13   investment mix be diversified. By investing only in certificates of deposit, Defendants
14   violated this portion of the Plan rules as well.

15       26. Ezekiel Zwillinger and Steven Zwillinger caused the 401(k) Plan to invest in
16   only certificates of deposit and to remain invested in certificates of deposit to benefit
17   themselves only and to the detriment of Plan participants. The Zwillinger's investment
18   of the Plans' assets was in effect a form of self-dealing. Ezekiel and Steven Zwillinger
19   chose security over growth because they both have substantial wealth. They essentially
20   used the assets in the 401(k) Plan as their personal savings account, and more
21   specifically, to provide the secure, fixed-income allocation for their own personal
22   investment portfolio, without regard for the investment needs of plan participants.
23   They did not seek growth for any of the 401(k) Plan participants. They were blind
24   and/or negligent to the fact that participants in the 401(k) Plan did not have the same
25   opportunities for wealth accumulation as successful business owners and that
26   participants (like most 401(k) investors) were relying on the growth of their respective
27   401(k) Plan accounts to fund retirement. Defendants were disloyal. They used the

1   401(k) Plan and its assets to advance their own investment agenda to the detriment of
2   the 401(k) Plan participants.

3       27. Defendants' were also imprudent with the Plans' assets. No prudent plan
4   fiduciary would invest all of the Plans' assets in certificates of deposit, especially in
5   the period from 2010 and 2018, a period of sustained economic growth after and
6   aggregate returns in the S&P 500 of 240%. The Plans' investment returns did not even
7   beat inflation. That means the Plans' participants are losing money relative to inflation.

8       28. Defendants imprudent investing of the 401(k) Plan's assets is an ongoing
9   problem for Westco's employees and participants because they cannot invest in the
10  Plan without losing money relative to inflation. They certainly cannot invest in the
11  Plan and expect to realize meaningful growth on their retirement savings.

12      29. The 401(k) Plan is a safe harbor plan. As a safe harbor plan, Westco avoids
13  stringent testing requirements but must in exchange, provide participants with a 100%
14  match on the first 3% of participant contributions, plus a 50% match on participant
15  contributions between 3% and 5% (4% total per annum), or provide participants with
16  3% (or more) of compensation in a Plan account, regardless of participant
17  contributions. The compensation must be 100% vested after completion of two years
18  of service. Defendants failed to make the contributions as required by law. Defendants'
19  failure to make the contributions is further evidence that Defendants are imprudently
20  managing the 401(k) Plan. In addition, Defendants' failure to make the statutory
21  contributions is tantamount to theft.

22      30. Because Defendants failed to provide mandatory disclosures to participants,
23  many participants are unaware that they even had a 401(k) Plan account with vested
24  compensation.

25      31. Ezekiel and Steven Zwillinger unlawfully comingled 401(k) Plan assets with
26  Westco's general operating account. For example, if a participant wanted to borrow
27  money from his/her 401(k) retirement account, Ezekiel or Steve Zwillinger would

1  provide the participant with a check for the loan amount that was drawn on. Plaintiff is

2  informed and believes that Ezekiel and Steve Zwillinger not only comingled the Plans'

3  assets with Westco's general operating account but used the Plans' assets to benefit

4  Defendants and to the detriment of the Plans' participants.

5      32. The Pension Fund is an "employee pension benefit plan" within the meaning

6  of 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of 29

7  U.S.C. § 1002(34).

8      33. Defendants are required to file annual disclosure statements for the Pension

9  Fund with the Department of Labor. Defendants, however, have not filed a disclosure

10  statement for the Pension Fund since 2015 – and that disclosure did not contain all the

11  requisite information. Defendants' failure to file government mandated disclosures is

12  evidence that Defendants are imprudently managing the Pension Fund.

13      34. The Pension Fund was created on October 1, 2005. Defendants sent a letter

14  on December 31, 2017 to Pension Fund beneficiaries declaring the Pension Fund was

15  frozen. Upon information and belief Defendants failed to properly fund the Pension

16  Fund since at least 2014. All Westco employees over the age of 21 years, with a

17  minimum 12 months service, and 1000 hours working for Westco qualified to have a

18  Pension Fund account. The Pension Funds' most recent disclosure states there are 29

19  active participants in the Pension Fund.

20      35. According the Pension Fund's most recent Department of Labor 5500-SF

21  disclosure, in 2015, the Pension Fund had $1,730,766 of assets under management at

22  the beginning of the fiscal year and only $1,584,416 of assets under management at the

23  end of the fiscal year. As such, the Pension Fund declined $146,350 in value over the

24  year. Upon information and belief, the majority of the benefits paid by the Pension

25  Fund were paid to Ezekiel Zwillinger (or possibly his wife, Carole Zwillinger). Ezekiel

26  Zwillinger is using the Pension Fund for his sole benefit and to the detriment of the

27  other Pension Fund participants.

36. In addition, importantly, the Pension Fund's most recent disclosures show the assets in the Pension Fund are not earning any income. That is, it appears Defendants have either placed the Pension Fund's assets in a non-interest bearing account – which would be flagrant breach of the duty of prudence, or Defendants have invested the Pension Funds' assets and are earning income on the investment but are keeping the income for themselves, which would be a breach of the duty of prudence and the duty of loyalty. In either scenario, Defendants are breaching ERISA duties and directly harming the Pension Funds' participants.

37. The level of misfeasance and malfeasance with respect to the funding of the Pension Plan and the management for Plan assets dramatically affects the funding status of the Plan and clearly threatens the prospects the Pension Plan will be adequately funded at the time Plaintiff and other Pension Plan participants become eligible to commence pension benefits.

38. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Fiduciary Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a)(1) states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) For the exclusive purpose of
>
> (i) Providing benefits to participants and their beneficiaries; and
>
> (ii) Defraying reasonable expenses of administering the plan;
>
> (B) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

39. ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v.*

1   *Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014). This duty includes, but is not limited to, a

2   duty to select prudent investments. Under ERISA, a fiduciary "has a continuing duty

3   to monitor [plan] investments and remove imprudent ones" that exists "separate and

4   apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble*

5   *v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). If an investment is imprudent, the plan

6   fiduciary "must dispose of it within a reasonable time." *Id.*

7       40. Failing to closely monitor a plan's investments constitutes a breach of

8   fiduciary duty. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). Similarly,

9   selecting certain investments because they benefit a party in interest constitutes a

10  breach of fiduciary duties when better performing and more prudent investments are

11  available.

12      41. In considering whether a fiduciary has breached the duties of prudence and

13  loyalty, courts consider both the "merits of the transaction" as well as "the

14  thoroughness of the investigation into the merits of the transaction." *Howard*, 100 F.3d

15  at 1488 (quotation and citation marks omitted). Mere "subjective good faith" in

16  executing these duties is not a defense; "a pure heart and an empty head are not

17  enough." *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983).

18                          **CLASS ACTION ALLEGATIONS**

19      42. Plaintiff brings this action on behalf of the Plan and as a class action pursuant

20  to Rule 23 of the Federal Rules of Civil Procedure.

21      43. Plaintiff seeks to certify, and to be appointed as representative of, the

22  following class ("Class"):

23          All participants and beneficiaries of the Plans whose Plan
            accounts had a balance at any time on or after February__,
24          2013. Excluded from the Class are Defendants and any
            Westco employees having or exercising fiduciary
25          responsibility for the investment of the Plans' assets or
26          administration of the Plans' terms.

27      44. This action meets the requirements of Rule 23 and is certifiable as a class

1    action for the following reasons:

2        45. <u>Numerosity</u>: The Class is so numerous that joinder of all its members is

3    impracticable. The Plans had more than 75 participants during the applicable period.

4        46. <u>Typicality</u>: Plaintiff's claims are typical of the Class members' claims. Like

5    other Class members, Plaintiff is a participant in the Plans, who has suffered injuries as

6    a result of Defendants' ERISA violations. Defendants treated Plaintiff consistently

7    with other Class members with regard to the Plans. Defendants managed the Plans as

8    single entities, and therefore Defendants' disloyal and imprudent decisions and self-

9    dealing affected all of the Plans participants similarly.

10       47. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the

11   Class, as his interests are aligned with the Class that he seeks to represent and Plaintiff

12   has retained counsel experienced in complex ERISA and class action litigation.

13   Plaintiff does not have any conflict of interest with any Class members that would

14   impair or impede his ability to represent such Class members.

15       48. <u>Commonality</u>: Common questions of law and fact exist as to all Class

16   members and predominate over any questions solely affecting individual Class

17   members, including but not limited to:

18           A. Whether Defendants breached duties of prudence by failing to provide

19           participants with timely notice of the Plans existence, rules, investments,

20           earnings, annual disclosures, and related documents.

21           B. Whether Defendants breached duties of prudence and loyalty by co-

22           mingling Plan assets with their own personal assets.

23           C. Whether Defendants breached duties of prudence and loyalty by

24           investing all of the 401(k) Plans' assets in certificates of deposit.

25           D. Whether Defendants breached duties of prudence by failing to give

26           401(k) Plan participants reasonable investment choices.

27

E. Whether Defendants breached duties of prudence and loyalty by failing to monitor the Plans investment choices.

F. Whether Defendants' are self-dealing with the Plans' assets.

G. Whether Defendants breached duties of loyalty and prudence by failing to invest Pension Fund assets.

H. The proper measure of monetary relief; and

I. The proper form of equitable and injunctive relief.

49. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. Separate lawsuits would establish incompatible standards to govern Defendants' conduct.

50. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Plan participants, as a practical matter, would be dispositive of the interests of other Plan participants or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court such as removal of a Plan fiduciary would be dispositive of non-party participants' interests. The accounting and restoration of the property of the Plans that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

51. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint has applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim is relatively small compared to

the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any Class member on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**COUNT I**
Breach of Duty of Prudence
29 U.S.C. § 1104(a)(1)(B)

52. Plaintiff repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

53. At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA by exercising authority and control with respect to the management of the Plans and the Plans' assets.

54. ERISA requires a plan fiduciary to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

55. The prudent person standard asks whether the plan fiduciaries employed appropriate methods to investigate and the merits of investments and the structure of a plan's investment portfolio. Fiduciaries' prudence is measured against an objective standard and their own lack of familiarity with investments is no excuse for failing to act with the care, skill prudence, and diligence required under the circumstances then prevailing.

56. As described throughout this Complaint, the Defendants breached their fiduciary duties of prudence in the following ways:

A. Failing to hire a professional investment advisor to oversee the Plans' investments and investment strategy

B. Acting as the investment advisor for the Plans.

C. Failing to hire a professional recordkeeper to make required disclosures to the Department of Labor and to the Plans' participants, and to ensure Defendants' contributions to participants' accounts were done correctly.

D. Acting as the recordkeeper for the Plans without having the requisite expertise to perform such function.

E. Failing to make required disclosures to the Department of Labor and to participants in a timely basis.

F. Failing to create and to provide participants with a plan document – or similar document that govern the Plans' operations.

G. Failing to design and implement a process to ensure that ERISA's requirements were/are satisfied in connection with the Plans' operation, administration, and performance.

H. Investing all of the 401(k) Plan's assets in poorly performing certificates of deposit.

I. Failing to invest the Pension Fund's assets with prudence.

J. Failing to monitor and replace poorly performing investments.

K. Comingling the Plans' assets with assets and/or accounts of parties in interest.

L. Failing to make statutorily required contributions to participant accounts.

57. No prudent fiduciary would invest 100% of a Plan's assets in certificates of deposit. The DOL has stated in the preamble to regulations issued under the fiduciary rules of ERISA Section 404 that capital preservation funds, like certificates of deposit,

were not appropriate long-term default investments because they would not produce returns that were equivalent to funds with greater exposure to equities and were less likely, therefore, to produce returns that would be needed to provide adequate income at retirement.

58. On information and belief, Defendants failed to even consider much better performing alternative investments; investments that are included in virtually every 401(k) plan in the country.

59. Even if Defendants suffered from some irrational fear of the risk of investing in the equity markets, their investment decisions belie any diligent investigation into alternative secure fixed-income investments that offered dramatically higher investment return. By way of example, guaranteed investment contracts provide investors with a guaranteed rate of return of more than 3.5% per year. In addition, the security of stable value funds is comparable to the security of certificates of deposit. A prudent fiduciary responsible for millions of dollars of plan participant retirement funds would not invest all of the plan assets in certificates of deposit like Defendants did here and keep those investments for over a period of six years.

60. Thus, Defendants breached their duties of prudence to the Plans under 29 U.S.C. § 1104(a)(1)(B).

61. As a direct and proximate result of these breaches, the Plans and Plaintiff and the Plan's other participants and beneficiaries, lost more than one million dollars to inferior returns on their retirement savings and Defendants' failure to fund the Plans.

62. Pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to restore all losses suffered by the Plans caused by their breach of fiduciary duties.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## COUNT II
### Breach of Duty of Loyalty
### 29 U.S. § 1104(a)(1)(A)

63. Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

64. ERISA's duty of loyalty requires fiduciaries to act solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

65. As described throughout this Complaint Defendants breached their fiduciary duties of loyalty in the following ways:

A. Administering the Plans for their own personal benefit and to the detriment of participants, by following an investment strategy that was designed satisfy the investment needs of the individual defendants that simultaneously denied the Plaintiff and all other participants the opportunity to benefit from one of the longest periods of sustained growth of the US economy and equity markets in history.

B. Failing to hire investment professionals to help administer the Plans because Ezekiel and Steven Zwillinger wanted to control all of the Plans' assets and to use them for their benefit.

C. Selecting only certificates of deposit for the 401(k) Plan because Ezekiel and Steven Zwillinger personally want to invest only in certificates of deposit in part because they have other retirement resources and are not concerned about returns on the Plans' assets.

D. Failing to make required annual contributions to 401(k) Plan participants' accounts and instead diverting this money to illegal or disallowed uses that inured to their personal benefit.

F. Operating the Pension Fund to primarily benefit Ezekiel Zwillinger.

H. Comingling the Plans' assets with Defendants' assets.

I. Keeping for themselves money of participants in the Plans who ceased working with Westco and were unaware they had retirement plan account balances.

66. Thus, Defendants breached their duties of loyalty to the Plans under 29 U.S.C. § 1104(a)(1)(A).

67. As a direct and proximate result of these breaches, the Plans and Plaintiff and the Plan's other participants and beneficiaries, lost roughly a million dollars to inferior returns on their retirement savings.

68. Pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to restore all losses suffered by the Plans caused by their breach of fiduciary duties.

## COUNT III
Failing to Administer the Plan in Accordance With Its Terms
29 U.S.C. § 1103

69. Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

70. Westco is an employer of participants of the Plans as defined by 29 U.S.C. § 1002(5).

71. As alleged *supra* ¶ 28, because the 401(k) Plan was designed as a safe harbor plan, contributions were made on behalf of all eligible employees, whether or not the employee elected to make salary deferral contributions to the Plan. Further, Defendants concealed from those employees the existence of their accounts in the Plan. After any of those employees terminated their employment with Westco, defendants illegally forfeited their accounts in the 401(k) Plan in violation Section 401(k)(13), 26 U.S.C. 401(k)(13).

72. Plaintiff also seeks any other equitable relief the Court deems appropriate,

1  including appointment of an independent fiduciary or fiduciaries to run the Plans;

2  transfer of the Plans' assets in certificates of deposit to prudent alternative investments;

3  removal of Plan fiduciaries deemed to have breached their fiduciary duties, and

4  imposition of a constructive trust as necessary for administration of some or all of the

5  aforementioned remedies.

6  **PRAYER FOR RELIEF**

7  Wherefore, Plaintiff prays for judgment as follows:

8  A. Certify this action as a class action as stated here and appoint Plaintiff's

9  counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

10  B. Declare Defendants breached their fiduciary duties to Plaintiff and the Class

11  in the manner described in the Complaint;

12  C. Declare that the Plans assets inured to the benefit of Westco in violation of

13  29 U.S.C. § 1103;

14  D. Order Defendants to personally make good to the Plans all losses that the

15  Plans incurred as a result of the breaches of fiduciary duties and self-dealing

16  described above and to restore the Plans to the position they would have been in

17  but for such breaches and self-dealing;

18  E. Enjoin Defendants from further violations of their fiduciary responsibilities,

19  obligations, and duties;

20  F. Other equitable relief to redress Defendants' illegal practices and to enforce

21  the provisions of ERISA as may be appropriate,

22  G. Award Plaintiff and the Class reasonable attorney's fees and costs of suit

23  incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the

24  benefit obtained for the Class;

25

26

27

1    DATED: February 25, 2019       Respectfully submitted,

2

3

4                                 Shoham J. Solouki (SBN 278538)

                                       SOLOUKI SAVOY LLP

5                                 316 West 2nd Street, Suite 1200

                                Los Angeles, California 90012

6                                 Telephone: (213) 814-4940

7                                 Facsimile: (213) 814-2550

8                                 Michael C. McKay

                                MCKAY LAW, LLC

9                                 7702 E. Doubletree Ranch Rd., Ste. 300

                                Scottsdale, Arizona 85258

10                               Telephone: (480) 681-7000

11                               Facsimile: (480) 348-3999

                                Email: mmckay@mckaylaw.us

12

13                                 *Attorneys for Plaintiff and the proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27