O

# United States District Court
# Central District of California

| | |
|---|---|
| DANIEL DRANEY and LORENZO IBARRA, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>WESTCO CHEMICALS, INC., et al.,<br><br>                Defendants. | Case № 2:19-cv-01405-ODW (AGRx)<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR CLASS CERTIFICATION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [60]** |

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Daniel Draney and Lorenzo Ibarra are employees of Defendant Westco Chemicals, Inc., whose principals are Defendants Ezekiel Zwillinger and Steven Zwillinger. (First Am. Compl. ("FAC") ¶¶ 14–15, 17–18, ECF No. 23.) Plaintiffs participated in Westco's 401(k) Plan, a defined-contribution, individual account pension plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. (FAC ¶¶ 1–2.) Plaintiffs allege that throughout most of the 2010s, the Zwillingers, as Westco's principals, invested the 401(k) Plan funds exclusively in low-interest-bearing certificates of deposit ("CDs"), failing to diversify the investments or otherwise construct a proper investment platform. (FAC ¶ 25.)

Plaintiffs allege that Westco employees missed out on over $1 million of collective fund growth as a result. *Id.*

Based on these and related allegations, Plaintiffs assert individual and class claims against Westco and Ezekiel and Steven Zwillinger for 1) breach of duty of prudence, 29 U.S.C. § 1104(a)(1)(B); 2) breach of duty of loyalty, 29 U.S.C. § 1104(a)(1)(a); and 3) failing to administer the plan in accordance with its terms, 29 U.S.C. § 1103.

The parties reached a settlement, and Plaintiffs moved for certification of a class and preliminary approval of the settlement. (Mot. Prelim. Approval Proposed Settlement ("Mot."), ECF No. 60.) As discussed herein, the Court has substantial concerns about whether the settlement is fair to certain class members, and moreover, the evidence of damages is insufficient for the Court to preliminarily determine whether the settlement is reasonable. Moreover, the notice to the class needs to provide more information about individual recovery. Accordingly, the Court **DENIES** certification of a class and **DENIES AS MOOT** preliminary approval of the settlement, both **WITHOUT PREJUDICE** to the parties revising their settlement as necessary to address the Court's concerns.

## II.   PROCEDURAL BACKGROUND

Plaintiffs brought this action as beneficiaries of two Westco retirement plans: a 401(k) Plan and a Defined Benefit Pension Plan. (*Id.* ¶¶ 2–3.) Upon Defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(1) Motion to Dismiss, the Court found that the FAC lacked allegations showing that the beneficiaries of the Defined Benefit Pension Plan suffered any injury-in-fact. (Order Granting Mot. Dismiss 7, ECF No. 29.) Accordingly, the Court dismissed Claims One and Two to the extent they included the Defined Benefit Pension Plan. The Court also noted the parties' apparent agreement that Claim Three did not encompass the Defined Benefit Pension Plan. (*Id.* 7–8.) Plaintiffs did not amend, leaving only the 401(k) Plan at issue. The proposed settlement in this matter reflects this disposition. (Mot. Ex. A ("Settlement

1 | Agreement") § 1.15 ("'*Plan*' shall mean: the Westco Chemicals, Inc. Profit Sharing
2 | 401(k) Plan.").)
3 |     The parties engaged in significant motion practice before they settled.  Westco's
4 | Motion for Summary Judgment and Plaintiffs' Motion for Class Certification were both
5 | briefed and pending when, on May 7, 2021, Plaintiff filed a Notice of Class Action
6 | Settlement.  (Not. Class Action Settlement, ECF No. 57.)  The Court vacated the
7 | motions and placed the case on inactive status.  (Minute Order, ECF No. 59.)  Shortly
8 | thereafter, Plaintiff filed the Motion now under consideration.
9 |     The arguments presented in connection with the Motion for Summary Judgment
10 | and the Motion for Class Certification are directly relevant to issues regarding
11 | settlement approval.  The Court therefore summarizes the course of each motion.

### A. Motion for Summary Judgment

Defendants moved for summary judgment on all three of Plaintiffs' claims. (Mot. Summ. J. ("MSJ"), ECF No. 49.) Defendants moved for summary judgment on the first two claims primarily on statute of limitations grounds. (*Id.* 7–12.)

    Under ERISA, a three-year limitations period begins when a plaintiff has "actual knowledge" of the ERISA violation. 29 U.S.C. § 1113(2). This limitation period extends to six years "in the case of fraud or concealment." *Id.* Defendants argued that this three-year statute of limitations governed, and that the six-year exception did not apply because Westco did not conceal its investment strategy. (MSJ 11.) In the Opposition, Plaintiffs did not argue for application of the six-year statute and instead based their arguments on a three-year statute of limitations. (Opp'n MSJ 6, ECF No. 52

Under this standard, Defendants argued that, as early as 2010 and 2011, both Mr. Draney and Mr. Ibarra had "actual knowledge" that the 401(k) Plan (hereinafter, "Plan") was invested solely in CDs. (MSJ 5, 10.) This actual knowledge, Defendants argued, triggered ERISA's three-year statute of limitations, which would have expired years before this case was filed on February 25, 2019. (*Id.* 7-10.) Defendants presented evidence indicating that both Mr. Draney and Mr. Ibarra knew that, due to the Plan's

1 holdings, their accounts were missing out on growth opportunities and that this was a
2 commonly discussed topic among Westco employees. (*Id.* 10 ("Mr. Draney felt so
3 strongly that CDs were an inappropriate investment vehicle for the Plan that, during the
4 2010–2011 time frame, he had conversations with '[v]irtually every employee in the
5 company' on the topic." (citing Decl. of Joseph C. Faucher Ex. A ("Draney Depo.")
6 66:10–17, ECF No. 49-2)).)

7 Defendants also argued that the "continuing breach" doctrine would not operate
8 to cure the untimeliness of Plaintiffs' claims. (Mot. 13 ("[I]f the breaches are of the
9 same kind and nature and the plaintiff had actual knowledge of one of them more than
10 three years before commencing suit, [§ 413(2)] bars the action." (citing *Phillips v.
11 Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 521 (9th Cir. 1991)).).)

12 The Notice of Motion and moving papers are ambiguous as to whether
13 Defendants sought summary judgment of Plaintiffs' claims on both an individual and a
14 class-wide basis, or on an individual basis only. The primary grounds for the Motion
15 were that "Plaintiffs" had actual knowledge of the alleged breaches of fiduciary duty
16 (that is, the fact that the Plan was invested solely in CDs) more than three years before
17 the date this case was filed. (*See, e.g.*, Mot. Summ. J. 2.) The remainder of the
18 memorandum continues to use the term "Plaintiffs," but the facts and arguments
19 presented therein relate solely to whether Mr. Draney and Mr. Ibarra had knowledge
20 that would render their claims time-barred. (*See generally id.*) Aside from showing
21 that Westco employees commonly discussed the topic, Defendants did not mention any
22 of the other class members or discuss whether their knowledge of the breaches might
23 have barred their claims.

24 Plaintiffs opposed Defendants' Motion for Summary Judgment. They argued
25 that Mr. Draney's and Mr. Ibarra's knowledge of the Plan's holdings in 2010 and 2011
26 is irrelevant to this case because they are not suing for transactions that occurred in 2010
27 and 2011, but instead are suing for transactions that took place during the 2015–2018
28

limitations period. (Opp'n MSJ 7.) Plaintiffs encouraged the Court to view each new sale or purchase of a CD that occurred during this period as a separate breach. (*Id.* 8–9.)

In essence, the parties' statute of limitations arguments in the Motion for Summary Judgment came down to whether Westco's challenged investment strategy constituted a series of separate, repeated violations, on one hand, or a single, unified, continuing violation, on the other hand. This distinction is important to class resolution of this matter and is discussed at length below.

Of note, in their Opposition to the Motion for Summary Judgment, Plaintiffs conceded to dismissal of the third cause of action. This settlement, therefore, is based solely on the breaches of duty Plaintiffs allege Defendants committed by investing Plan funds exclusively in CDs.

**B.     Motion for Class Certification**

In their Motion for Class Certification, Plaintiffs presented many of the same arguments they present in the instant motion in support of class certification for settlement purposes. Plaintiffs argue that the commonality, typicality, and adequacy requirements are satisfied because Ezekiel and Stephen Zwilinger, as Plan fiduciaries, made the same poor investment decisions with respect to the entire employee class, including the named Plaintiffs. (Mot. Certify Class 6–8, ECF No. 48.)

Defendants filed a brief in response to the Motion for Class Certification. (Opp'n Mot. Certify Class, ECF No. 50.) Though an "Opposition" in name, in reality Defendants' brief is a near-complete concession to class certification. Westco conceded that class certification was substantively appropriate and rather half-heartedly argued that the class certification motion should have been disregarded as untimely. (*Id.* 3.) Westco did not argue against certification of a class based on the statute of limitations. (*See generally id.*)

### III.     LEGAL STANDARD

With this Motion, Plaintiffs ask the Court to certify the class and to preliminarily approve the parties' settlement. "[A]lthough the fact of settlement is relevant to the

5

class certification analysis, certification must nonetheless meet Rule 23(a) and (b)[] requirements . . . ." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 ("Subdivisions (a) and (b) [of Rule 23] focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.") Thus, this Motion is best treated as two separate motions with two separate legal standards: one to certify a class, and the other for preliminary settlement approval.

**A.  Class Certification**

To obtain class certification under Rule 23, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Zinser v. Accufix Research Ist., Inc.*, 523 F.3d 1180, 1186 *amended* 273 F.3d 1266 (9th Cir. 2001). "Rule 23 does not set forth a mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Id.*

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In other words, the class must, at a *minimum*, satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation in order to receive class treatment. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the plaintiff must "satisfy through evidentiary proof" the existence of at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). When a class is certified under Rule 23(b)(3), class members must be provided a way of opting out of the class;

when a class is certified under Rule 23(b)(1) or (b)(2), class members need not be provided with an opportunity to opt out. *Id.* 34; *Dukes*, 564 U.S. at 362.

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351). This analysis applies to both Rule 23(a) and Rule 23(b). *Behrend*, 569 U.S. at 33. If the court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

**B.     Preliminary Settlement Approval**

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Courts may approve a settlement agreement only where it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary approval stage, "the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann*, 314 F.R.D. at 319 (internal quotation marks omitted). At this stage, a "full fairness analysis is unnecessary." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). The "settlement need only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Judicial policy strongly favors settlements. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

## IV. DISCUSSION

The Court first addresses Plaintiffs' request for settlement class certification. The Court denies class certification, which is technically grounds to deny preliminary approval without further analysis. To assist the parties, however, the Court also outlines its principal concerns with the settlement itself.

### A. Class Certification

The papers the parties filed in connection with Defendants' now-moot Motion for Summary Judgment make clear that the effect of ERISA's three-year statute of limitations was a sharply contested issue in this case. Although neither party raised the statute of limitations issue in connection with Plaintiffs' prior class certification motion, the issue is directly relevant to whether class treatment of this case is appropriate. In short, the strength of Defendants' statute of limitations defense creates a rift in the class between employees with non-time-barred, fully meritorious claims and employees with potentially time-barred, less meritorious claims. The Court does not conclude that this rift is insurmountable, but the parties must address this rift before the Court will preliminarily approve this settlement.

### 1. *Strength of Statute of Limitations Defense*

As discussed above, Defendants mounted a statute of limitations defense as part of their Motion for Summary Judgment. Defendants argued that the Court should view their challenged investment strategy as a single, unified wrong which began in 2011 or earlier, and that, from this perspective, Plaintiffs' actual knowledge of the investment strategy for a period of greater than three years is fatal to their claim. (MSJ 13.)

In response, Plaintiffs observed that the Plan did not hold the same investments in 2011 as it did during the limitations period (2015–2018). (Opp'n MSJ 6.) Plaintiffs argued that the Court should view each new investment transaction related to a CD as a fresh breach by Defendants. (*Id.* 8 ("[E]ach time a fiduciary fails to remove imprudent plan assets or causes a plan to purchase another imprudent asset, a new claim for relief arises.").) Under this approach, Plaintiffs explained, Plaintiffs were suing only for

damages arising from transactions made within the limitations period, and, as such, every employee who had investments in the Plan during the limitations period is a proper class member and is not time-barred.

In moving for summary judgment, this statute of limitations defense was the only argument Defendants raised against Plaintiffs' ERISA breach of duty claims.

Ultimately, the statute of limitations issue in this case comes down to whether the Court should view Defendants' investment failures as a series of "repeated" violations or a single "continued" violation. *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1088 (7th Cir. 1992). Framed in this manner, Defendants' defense was strong, and it appears quite likely that a court would have found a single continued violation. The policy underlying statutes of limitations supports Defendants' argument. Among other things, statutes of limitations are meant to prevent plaintiffs from allowing damages to unnecessarily accrue once the facts of the case have reached a state of permanence. *See id.*; *see also Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 n.6 (9th Cir. 2009) (observing that one purpose of statute of limitations is to "prevent[] claims from plaintiffs who slept on their rights"). Here, Mr. Draney, at least, was well aware that his Plan funds were invested exclusively in CDs as early as 2011. He testified that he had discussions with "[v]irtually every employee in the company" about the Plan's investment in CDs, and that it was a "running joke" of which "everyone in the company" was aware. (MSJ 5–6 (citing Draney Depo. 66:10–20, 70:22–71:5, ECF No. 49-2).) Nothing prevented Mr. Draney and those other employees from vindicating their rights under ERISA sometime between 2011 and 2014. The issues presented would have been exactly the same, the main difference being that, had suit been brought earlier, the damages would have been much lower. To view Defendants' investment strategy as a series of repeated violations would be to countenance the unnecessary piling up of damages, eviscerating a material purpose of the ERISA statute of limitations.

Of course, this is a settlement, and the Court need not and does not make a formal finding on the statute of limitations issue. Still, the strength of the defense is relevant to whether the settlement is fair. The Court's concern is that the strong statute of limitations defense creates two subclasses of plaintiffs: (1) a class of employees who <u>were not</u> aware of the Plan's holdings prior to the limitations period and whose claims are not time-barred, and (2) a class of employees who <u>were</u> aware, and whose claims are therefore likely time-barred. The named Plaintiffs are both in the latter subclass, raising concerns about typicality and adequacy.

### 2. *Effect of Statute of Limitations Defense on Class Certification: Typicality, Adequacy*

Given that Defendants' statute of limitations defense was strong, that it was the only apparent defense to the claims at issue, and that it may bar some employees' claims but not others', the Court has concerns about whether the named Plaintiffs' claims are typical of the class and whether the named Plaintiffs can adequately represent the class.

First, due to the statute of limitations, Mr. Draney's and Mr. Ibarra's claims may not be typical of other class members' claims. At the very least, there is ostensibly a subclass of employees who began working for Westco within the limitations period and whose claims could not possibly be time-barred by any actual knowledge. The Court is without adequate information to determine how many such employees exist and what their damages would be, but the Court cannot disregard the possibility that such employees exist, especially since the parties seek a settlement that denies employees the ability to opt out. These employees have fully meritorious claims, unlike Mr. Draney and Mr. Ibarra. Therefore, it appears unlikely that Mr. Draney's and Mr. Ibarra's claims are typical of those of the entire class.

Second, for similar reasons, it appears unlikely Mr. Draney and Mr. Ibarra would be able to adequately represent the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. Here. Mr. Draney's and Mr. Ibarra's claims are potentially time-barred, so they could be motivated to settle the case for an amount lower than the damages they actually suffered, which would work to the detriment of the employees whose claims are not time-barred.

      3.     *Non-opt-out class: Rule 23(b)(1) and (2)*

The parties seek certification of a non-opt-out class. (Settlement Agreement § 2.2.2.) As the Settlement Agreement acknowledges, this means that the parties must show that the case fits the description of either Rule 23(b)(1) or (b)(2). *Dukes*, 564 U.S. at 362l; (Settlement Agreement § 2.2.2).

First, (b)(2) class certification is inappropriate. Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive. *Nelsen v. King County*, 895 F.2d 1248, 1254–55 (9th Cir. 1990). Rule 23(b)(2) allows courts to certify certain classes seeking monetary damages, but only where such relief is "merely incidental to [the] primary claim for injunctive relief." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). Here, the primary aim of the suit is to require Westco to compensate employees for poor Plan performance. Westco changed its investment strategy in 2018, so Plaintiffs do not seek injunctive relief. As individualized compensatory relief is the primary subject of this suit, (b)(2) class certification is inappropriate.

It also does not appear likely that this case is suitable for (b)(1) class certification. Subsection (b)(1) has two alternative components, neither of which describe this situation. The first acceptable scenario is a class action in which individual class members prosecuting separate actions would create a risk of "inconsistent or varying

adjudications with respect to individual class members that would establish *incompatible standards of conduct* for the party opposing the class." (Fed. R. Civ. P. 23(b)(1)(A) (emphasis added.) Certainly, varying adjudications are possible if the Court tries individual employee claims individually. But it is not clear how these varying adjudications would create incompatible or conflicting instructions *for Westco*. For example, if Employee A gets a judgment in their favor, Westco will be directed to add a particular sum to Employee A's 401(k) account. If Employee B gets a judgment of dismissal, Westco will not be directed to take any action with respect to Employee B. This process does not impose incompatible standards of conduct on Westco.

The second acceptable (b)(1) scenario is a class action in which individual class members prosecuting separate actions would "create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Whether there is any such "risk" is a case-by-case inquiry that goes beyond whether a court's disposition of an individual's claim will have precedential effect for the remaining individuals' claims. *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 276 (S.D.N.Y. 2011), *class decertified*, *Wu v. Pearson Educ. Inc.*, No. 09 Civ. 6557(KBF), 2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012). The court must look to the parties' allegations and evidence to determine if the case presents issues whose resolution might impede other class members' interests. *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 600 n.5 (S.D.N.Y. 1982) ("Rule 23(b)(1)(B) contemplates possible adverse effects upon class members, rather than upon the opposing party; examples are claims by numerous persons against an insufficient fund, or the effects of a negative or mandatory injunction upon the opposing party.")

Thus, ERISA cases in which plaintiffs ask the court to order their employer to administer a plan in a particular manner are generally suitable for (b)(1) class certification because such an order would be dispositive of the interests of other plan

participants. *See, e.g., Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016). Here, though, Plaintiffs are not seeking an injunctive order; they are seeking individual monetary compensation for past investment decisions now abandoned. Thus, no individual judgment would result in an order to a plan administrator that would affect the investments or the other rights of the class. This makes the case inappropriate for (b)(1)(B) certification.

Where do these observations leave Plaintiffs' prospects for class certification? The evidence Defendants presented with their Motion for Summary Judgment generally suggests to the Court that the Plan's investment in CDs was a topic Westco employees commonly discussed amongst themselves. If this is the case, it is possible that class counsel could sort Westco employees into two groups: a subclass of individuals who started working for Westco within the limitations period and a subclass of individuals who started working for Westco before the limitations period began. If the topic was indeed widely discussed, then the former group is roughly the group of employees who first learned of the Plan's holdings during the limitations period and whose claims are therefore not time-barred, and the latter group is roughly the group who first learned of the Plan's holdings outside the limitations period and whose claims may be time-barred. If the parties can craft a settlement in which the former group receives a full and complete recovery according to the experts' estimates, and the potentially time-barred class receives a proportionally lower recovery, the Court will be much more likely to approve it. Of course, it is also possible that the "actual knowledge" issue is not so binary, and that class certification is therefore inappropriate. The parties are in the best position to make this determination.

Moreover, for these same reasons, the Court is unlikely to approve a settlement unless it allows class members to opt out. The case does not appear to fit the (b)(1) or (b)(2) certification descriptions, and there is too great a chance of non-time-barred employees being undercompensated. Even with carefully crafted subclasses, there may remain employees who fall into the 'potentially time-barred' subclass as defined but

who wish to argue and prove that they were in fact unaware that the Plan was fully in CDs. It would be unjust to deny these employees an opportunity to argue on an individual level, and it is conceivable that they might wish to do so. Assuming 30% attorneys' fees, the average estimated individual recovery in this case will be $7,000 ( (70% of $500,000) / 50). This amount is not so low as to render inconceivable the possibility that individual plaintiffs might wish to appear individually.

For now, it is sufficient for the Court to note that typicality and adequacy are not satisfied. Rule 23(b) likewise remains unsatisfied. Class certification is **DENIED** on these bases.

## B. Preliminary Settlement Approval

Strictly speaking, the motion for preliminary settlement approval is **DENIED AS MOOT** due to the denial of class certification. The Court presents the following observations to aid the parties in subsequent settlement proposals.

### 1. *Adequacy of Negotiations*

"While courts should not casually second-guess class settlements brokered by the parties, they should not greenlight them, either, just because the parties profess that their dubious deal" is sufficient. *Briseño v. Henderson*, 998 F.3d 1014, 1018 (9th Cir. 2021). Instead, courts approving settlement agreements must carefully examine them to ensure they are the product of "serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319; *see Briseño*, 998 F.3d at 1023 (directing courts to "scrutinize agreements for subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations" (ellipsis and internal quotation marks removed)). These signs include: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseño*, 998 F.3d at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 947 (9th Cir. 2011) (alteration

1  brackets and some internal quotation marks removed)).  This heightened inquiry applies
2  both before and after class certification (and here, where class certification is
3  simultaneously sought).  *See Briseño*, 998 F.3d at 1024.

4    The proposed settlement in this case contains a clear sailing arrangement.  As
5  part of the proposed settlement, Defendants agree to:

> take no position directly or indirectly on Class Counsel's application for attorneys' fees and expenses, provided that Class Counsel do not request an award of attorneys' fees higher than 30% of the Class Settlement Amount ($500,000), and Defendants shall leave the amount of Class Counsel's fees and expenses to the sound discretion of the Court. The Court's consideration of requests for Class Counsel's fees and expenses are matters separate and apart from the Settlement between the Parties, and the Court's decision concerning the attorneys' fees and expenses shall not affect the validity of the Agreement or finality of the Settlement in any manner. Class Counsel shall be solely responsible for allocating the Class Counsel's fees and expenses among Plaintiffs' counsel.

(Settlement Agreement, ECF No. 60-1.)

This is undeniably a clear sailing arrangement, and pursuant to *Briseño*, it is a hallmark of unfairness.  In *Briseño*, the Ninth Circuit positively drew and quartered a proposed settlement, finding "a bevy of questionable provisions," including a clear sailing arrangement, "that reek[ed] of collusion at the expense of the class members."  998 F.3d at 1018.  This Court would not describe the present settlement as dramatically; here there is at most a faint whiff in the air.

Or, perhaps more accurately, this appears to be a case of a defendant simply capitulating to a settlement which it finds fair from its perspective, but which may harm potential class members not represented by the named plaintiffs or their counsel.  The experts who analyzed the Plan ostensibly fixed the damages between $616,944 and $778,308.  (Decl. of Michael McKay ("McKay Decl.") ¶ 9, ECF No. 60-4.)  The parties propose to settle for $500,000, an amount that includes attorneys' fees.  (Settlement Agreement § 7.1)  Once fees are removed, the overall settlement is between 45% and

57% of the actual damages. Granted, it is reasonable that the overall settlement is lower than the estimates due to the statute of limitations defense. Nevertheless, the Court maintains its concerns for class members who have completely meritorious, non-time-barred claims and whom this settlement may undercompensate.

*2. Fairness of Settlement Terms*

Federal Rule of Civil Procedure 23(e)(2) requires courts approving settlements to first find that the settlement is "fair, reasonable, and adequate." *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The primary concern of [Rule 23(e)] is the protection of th[e] class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir.1982), *cert. denied* 459 U.S. 1217 (1983).

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992), *cert. denied, Hoffer v. City of Seattle*, 506 U.S. 953 (1992). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal quotation marks omitted).

Here, the evidence Plaintiffs submitted to show that a $500,000 total recovery is reasonable is entirely inadequate, even for the preliminary approval stage. Plaintiffs'

evidentiary showing relies solely on class counsel's hearsay assertion that the experts who analyzed this case arrived at certain overall damage values. (Decl. of Michael C. McKay ¶ 9.) Counsel does not discuss the experts' specific qualifications. Counsel also does not discuss the methodology used to arrive at these figures or explain why the estimates vary. Plaintiffs ask the Court to accept the conclusory hearsay assertions of class counsel as evidence supporting the conclusion that this settlement provides sufficient compensation for each class member. This the Court will not do.

The Court's insistence is not a mere formality. If Plaintiffs' rebuttal to the statute of limitations defense has any merit, it lies in the argument that Plaintiffs seek to recover damages arising exclusively from transactions that took place during the limitations period. But if that is the case, the Court needs sufficient information about the methodology of the damages estimates to confirm that the methods properly reflect Plaintiffs' theory of the case. Plaintiffs' sole proffered assertion is insufficient for this purpose. *Cf. Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 944 (N.D. Cal. 2016) (denying preliminary approval of a $12.25 million settlement after extensive analysis of the method used to calculate the settlement value).

### 3. *Notice to Class Members*

Notice provided pursuant to Rule 23(e) must "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill.*, 361 F.3d at 575). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

That said, the notice combined with a class member's reasonable inquiry must provide the employee with a way of roughly estimating their settlement payout. Here, even a scrupulous employee who receives the proposed notice would have no way of obtaining the data necessary to estimate the value of his or her claim. Individual

employees do not have access to aggregate Plan investment data. Based on the information provided (the aggregate settlement amount, the estimated class size, and the 30% attorney fee benchmark (Settlement Agreement §§ 3, 7, 13)), the most an employee could conclude is that the average recovery would be about $7,000 and that employees with larger or smaller 401(k) accounts would receive a proportionally larger or smaller recovery. This is not sufficient to allow an employee to determine whether to oppose the settlement.

The Court suggests, without limitation, two ways to remedy this concern. First, although individual estimates are not required, they would certainly remedy the problem. This class is not particularly large, and thus it does not appear that it would be particularly onerous for class counsel to work with Westco to derive a rough estimate for each employee.

Alternatively, the notice could provide a table matching average Plan account sizes during the class period to estimated recovery amounts, e.g.:

| *If the time-weighted average amount invested in your 401(k) Plan during [the dates of the Class Period] was:* | *Then your estimated recovery under this lawsuit (after fees are deducted) will be:* |
|---|---|
| $50,000 | $2,000 |
| $100,000 | ... |

The foregoing covers the Court's principal concerns with this settlement at the preliminary approval stage. The Court will reserve its analysis of the remaining class certification and preliminary settlement approval requirements for the parties' anticipated amended motion.

## V. CONCLUSION

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)). This Court emphasizes that class disposition of this matter may very well be appropriate and notes that, by its back-of-the-napkin calculations based on the data presented, nothing in the record suggests the total settlement amount of $500,000 is patently or necessarily *un*reasonable. As a broad proposition, class disposition of this matter appears favorable, and the Court acknowledges and appreciates the diligent efforts of class counsel, as officers of this Court, to craft a settlement that is fair to all class members.

For now, the Court **DENIES** Plaintiffs' Motion to Certify Settlement Class and **DENIES AS MOOT** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, both **WITHOUT PREJUDICE** to filing an amended motion after revising the class or other aspects of the settlement pursuant to the Court's concerns. (ECF No. 60.)

If proceeding with an amended motion, the Court directs Plaintiffs to schedule the hearing on their amended motion at least **two (2) months** after the date they file it. This is so the Court has sufficient time to review the settlement prior to the hearing date. The Court will hold a hearing, if necessary, to address any remaining issues in real time so as to avoid the need for further motion practice.

**IT IS SO ORDERED.**

September 29, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**