1   Shoham J. Solouki (SBN 278538)
    **SOLOUKI SAVOY LLP**
2   316 West 2nd Street, Suite 1200
    Los Angeles, California 90012
3   Telephone: (213) 814-4940
    Facsimile: (213) 814-2550
4   Email: shoham@soloukisavoy.com

5   Michael C. McKay (Pro Hac Vice)
    **MCKAY LAW, LLC**
6   7702 E. Doubletree Ranch Rd., Ste. 300
    Scottsdale, Arizona 85258
7   Telephone: (480) 681-7000
    Facsimile: (480) 348-3999
8   Email: mmckay@mckaylaw.us

9   Attorneys for Plaintiffs and the
    Proposed Class

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **WESTERN DIVISION**

14

15  Daniel Draney and Lorenzo Ibarra,   )   Case No.: 2:19-cv-01405-ODW-AGRx
    individually and on behalf of all others )
16  similarly situated,                  )   **AMENDED MOTION AND**
                                         )   **MEMORANDUM OF POINTS AND**
17          Plaintiffs,                  )   **AUTHORITIES IN SUPPORT OF**
                                         )   **MOTION TO: (1)**
18  vs.                                  )   **PRELIMINARILY APPROVE**
                                         )   **PROPOSED SETTLEMENT; (2)**
19                                       )   **CERTIFY A SETTLEMENT CLASS;**
20  Westco Chemicals, Inc.; Alan Zwillinger; )   **(3) APPROVE  PROPOSED PLAN**
    and Steven Zwillinger,               )   **FOR CLASS NOTICE; AND (4)**
21                                       )   **SCHEDULE FINAL SETTLEMENT**
          Defendants.                    )   **HEARING**
22                                       )
23                                       )   Date: May 9, 2022
24                                       )   Time: 1:30 p.m.
                                         )   Courtroom: 5D, 5th Floor
25                                       )   Judge: Honorable Otis Wright II
                                         )
26                                       )

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      INTRODUCTION ........................................................................................... 1

II.     CLASS CERTIFICATION ............................................................................. 2

     A.      Statute Of Limitations Defense .......................................................... 2

          1.   Defendants' Motion For Summary Judgment Is Moot ............. 3

          2.   There Is No Rift Between Plaintiffs And Class Members ........ 3

          3.   Settlement Negotiations ........................................................... 4

          4.   Under Compensating Class Members ...................................... 5

          5.   Piling Up Of Damages ............................................................. 5

          6.   Second Motion For Summary Judgment ................................... 5

     B.      Effect Of Statute Of Limitations Defense On Class Certification:
          Typicality And Adequacy ..................................................................... 7

     C.      Certification Under Rule 23(b)(1) ....................................................... 9

     D.      Non-Opt Out Class ............................................................................. 12

     E.      Certification Under Rule 23(b)(3) ..................................................... 12

          1.   Predominance ........................................................................... 14

          2.   Superiority ................................................................................ 14

III.    PRELIMINARY APPROVAL ..................................................................... 15

     A.      Adequacy Of Negotiations ................................................................ 15

          1.   Attorney Fees Are Not At Issue .............................................. 16

          2.   The Court Has Discretion To Award Attorney Fees ............... 16

          3.   Plaintiffs' Counsel's Lodestar Already Exceeds 30% Of The
             Settlement ................................................................................. 16

          4.   Defendants Did Not Capitulate ................................................ 17

          5.   *Briseño* Is Not Applicable ....................................................... 18

          6.   Plaintiffs Stipulate Defendants May Object To A Fee Application ...... 19

i

B.    Fairness Of Settlement ............................................................ 19

1.  Expert Reports ......................................................... 20

2.  Independent Fiduciary Review ............................................. 22

C    Notice To Class Members ........................................................ 23

IV.   MEET AND CONFER .................................................................... 24

V.  CONCLUSION ............................................................................... 25

AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION TO:
(1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED
PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

1

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aichele v. City of Los Angeles*,
    Case No. CV12-10863-DMG (FFMx) at *6 (CD. Cal. Sep. 9, 2015).....................20

*Alday v. Raytheon Co.*,
    619 F.Supp.2d 726, 736 (D. Ariz. 2008) .....................................................................4

*Allen v. Bedolla*,
    787 F.3d 1218, 1223 (9th Cir. 2015). .........................................................................5

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558, 566 (S.D. Cal. 2012) ........................................................................7

*Briseño v. Henderson*,
    998 F.3d 104, 1018 (9th Cir. 2021) .................................................................... 16, 17

*Calderon v. Moore*,
    518 U.S. 149, 150 (1996)..............................................................................................3

*Cameron v. E.M. Adams & Co.*,
    547 F.2d 473, 478 (9th Cir. 1976) ..............................................................................8

*Colesberry v. Ruiz Food Products, Inc.*,
    CV F 04-5516 AWI SMS at *9 (E.D. Cal. June 30, 2006). ......................................9

*Deakins v. Monaghan*,
    484 U.S. 193, 199 (1988)..............................................................................................3

*Dearaujo v. Regis Corp.*,
    No. 2:14-cv-01408-KJM-AC at *1026 (E.D. Cal. June 29, 2016).......................20

*Douglin v. GreatBanc Trust Co.*,
    115 F.Supp.3d 404, 412 (S.D.N.Y. 2015) ..................................................................8

*Eisen v. Carlisle & Jacquelin*,
    447 U.S. 156 (1974)......................................................................................................8

*Feinstein v. Firestone Tire and Rubber Co.*,
    535 F. Supp. 595, 600 n. 5 (S.D.N.Y. 1982) .............................................................3

*Fishman v. Ponce*,
    Case No. CV17-201MWF(JC) at 8 (C.D. Cal. Sep. 15, 2017) .................................3

*Foster v. Adams & Assoc.*,
    18-cv-02723-JSC at  8 (N.D. Cal. Oct. 21, 2021) ..................................................20

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335, 1340 (9th Cir. 1976) .......................................................................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935, 947 (9th Cir. 2011). .................................................................... 16, 17

iii

*In re Rite Aid Corp Sec. Litig.*,
    396 F.3d 294, 298 (3d Cir. 2005) ........................................................ 20

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v.
Coldwell Banker Real Estate Corp.*,
    281 F.R.D. 422, 436 (C.D. Cal. 2012) .................................................... 8

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387 (C.D. Cal. 2008) .......................................................... 10

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102, 110 (N.D. Cal. 2008) ............................................. 10, 12

*K.M v. Regence Blueshield*,
    Case No. C13-1214 RAJ (at *25 (W.D. Wash. Jan. 24. 2014) ............. 11

*Nat'l Rural Telecomms. Corp.  v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 6

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982)................................................................... 7

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815, 834 (1999) ...................................................................... 11

*Pace v. Quintanilla*,
    Case No.: CV 14-2067 DOC (RNBx), at *5-6 (C.D. Cal. July 31, 2015) ............... 8

*Payala v. Wipro Tech.*, Inc.,
    No. 15-04063, 2016 WL 6094158, at *5 (C.D. Cal. Aug. 23, 2016) ..................... 10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................ 7

*Schwarzschild v. Tse*,
    69 F.3d 293, 295 (9th Cir. 1995) ............................................................ 6

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466, 486 (C.D. Cal. 2012) .................................................... 8

*Terraza v. Safeway, Inc.*,
    241 F.Supp.3d 1057, 1068 (N.D. Cal. 2017)........................................... 6

*Traylor v. Avnet, Inc.*,
    257 F.R.D. 521, 528 (D. Ariz. 2009)..................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 1045 (2016)................................................................. 12

*Villegas v. J.P. Morgan Chase & Co.*,
    No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ..................... 8

iv

*Williams v. Sinclair,*
    529 F.2d 1383, 1388 (9th Cir. 1975) ........................................................ 8

*Wit v. United Behavioral Health,*
    317 F.R.D. 106, 132-33 (N.D. Cal. 2016) ........................................... 9, 10

*Wu v. Pearson,*
    277 F.R.D. 255, 261 (S.D.N.Y 2011) ................................................... 11

*Z.D. ex rel. J.D. v. Grp. Health Co-op.,*
    No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012) ........... 10

*Ziegler v. Connecticut General Life Ins., Co.,*
    916 F.2d 548, (9th Cir. 1990) ............................................................ 6

*Rannis v. Recchia,*
    380 Fed. Appx. 646, 650-52 (9th Cir. 2010) ......................................... 10

**Rules**

Federal Rules of Civil Procedure, Rule 23. ............................................ *passim*

## NOTICE OF MOTION

To the Court and all parties of record:

Please take notice that on May 9, 2022 at 1:30 p.m. or as soon thereafter as the matter may be heard, Plaintiffs Daniel Draney and Lorenzo Ibarra ("Plaintiffs") move for an order: (1) preliminarily approving the proposed settlement of this class action on the terms set forth in the settlement agreement previously submitted; (2) approving the proposed notice of settlement as set forth in the proposed Amended Settlement Notice; (3) certifying a settlement class under Rule 23(b)(1)(b) or 23(b)(3); and (4) scheduling a final settlement hearing.

The motion is based on this notice of motion, the accompanying memorandum of points and authorities, declaration of Michael C. McKay, the expert reports of Dr. Steve Pomerantz, and Dr. D. Lee Heavner, the spreadsheet created by Dr. Pomernatz showing anticipated allocation of settlement funds, the Court's file on this case, and such other evidence as may be presented at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs filed an unopposed motion requesting the Court to certify this action as a class action and to preliminarily approve a class action settlement. (ECF No. 60.) The Court denied the motion without prejudice. (ECF. No. 62.) The Court's Order denying the motion raises concerns about the merits of Plaintiffs' claims, fairness of the proposed settlement, certification under Rule 23, evidence of damages, and notice to class members. (*Id., e.g.*, at 2:8-17.)[1] Plaintiffs focus on the concerns raised in the Court's Order denying the motion.

---

[1] Plaintiffs and Plaintiffs' Counsel offer chagrined apologies to the Court for not preemptively addressing the concerns raised in the Court's Order denying the motion. Plaintiffs and Plaintiffs' Counsel respectively appreciate the opportunity to do so in this Amended Motion.

Plaintiffs do not repeat the facts, law, arguments, exhibits, and evidence previously submitted with their original motion, but Plaintiffs' incorporate those herein.

## II.   CLASS CERTIFICATION

### A.   Statute of Limitations Defense

Before Defendants agreed to settle this case, Defendants moved for summary judgment. (ECF No. 49.) Defendants argued that Plaintiffs' claims are time barred by ERISA's three-year statute of limitations. (*Id.* at 3:23-27.)

Plaintiffs opposed Defendants' motion for summary judgment. (ECF No. 52) Plaintiffs argued that disputed issues of material facts exist concerning when Plaintiffs actually knew of Defendants' alleged fiduciary breaches. (ECF No. 52 at 4:1-7) (stating both Plaintiffs adamantly deny having actual knowledge of alleged the ERISA violations before the limitations period.)

After Defendants' motion for summary judgment was fully briefed the parties participated in a mediation with Gail A. Glick, Esq. who is a neutral with Judicate West. *See* Declaration of Michael McKay In Support Of Amended Motion For Class Certification And Preliminary Approval Of Class Action Settlement ("McKay Declaration") ¶ 4. The parties submitted mediation briefs and spent a full day mediating. *Id.* ¶¶ 5-6. The parties did not reach a settlement at the mediation. *Id.* at ¶ 6. However, Ms. Glick continued to work with the parties for over a month after the mediation concluded. *Id.* Ms. Glick eventually submitted to the parties a mediator's proposal. *Id.* ¶ 7. After three years of vigorous litigation and more than a month negotiating a potential settlement both parties agreed to settle the case consistent with the terms of the mediator's proposal.[2] *Id.*

---

[2] The mediator, Gail A. Glick, Esq., agreed to provide a sworn declaration in support of this motion. Ms. Glick even emailed a draft declaration to counsel for the parties to review and approve. However, Ms. Glick, as a neutral, would not agree to sign her declaration for filing here unless Defendants consented to her doing so. Although Defendants had ample time to consent, Defendants did not consent until after the motion was drafted and late in the afternoon on the deadline for Plaintiffs to file this motion.

2

Thereafter, pursuant to Local Rule 16-15.7, the parties notified the Court of the settlement. (ECF No. 57.) The Court then denied as moot Defendants' motion for summary judgment and ordered Plaintiffs to file a motion for class certification and preliminary approval of the proposed settlement. (ECF No. 59.)

Plaintiffs filed the motion as instructed by the Court. (ECF No. 60.) The motion was unopposed. But the Court denied the motion, in part, because of concerns the Court has about arguments Defendants made in their mooted motion for summary judgment. (ECF No. 62.) The Court expressed concern that there may be "a rift in the class between employees with non-time-barred, fully meritorious claims and employees with potentially time-barred, less meritorious claims." (*Id.* at 8:11-15.) Plaintiffs understand and apricate the Court's concern. The concern, however, should not prevent class certification and preliminary approval of the settlement for at least the following reasons.

### 1.   Defendants' Motion for Summary Judgment is Moot

The Court denied Defendants' motion for summary judgment. (ECF No. 59.) Defendants are no longer asserting any of the arguments in their motion for summary judgment. The law is well established. Federal courts adjudicate actual, ongoing controversies between litigants and "may not give opinions upon moot questions or abstract propositions." *See Fishman v. Ponce,* Case No. CV17-201MWF(JC) at 8 (C.D. Cal. Sep. 15, 2017) *citing Deakins v. Monaghan,* 484 U.S. 193, 199 (1988) (citations omitted and *Calderon v. Moore,* 518 U.S. 149, 150 (1996) (*per curiam*).

Plaintiffs respectfully submit the arguments Defendants made in their motion for summary judgment are moot. They are abstract propositions. There is no controversy between the parties about the limitations period. Unasserted and abstract arguments should have zero impact on the parties' ability to settle this litigation.

### 2.   There is No Rift Between Plaintiffs and Class Members

Typically, identification of class members is confirmed after a class is certified. However, to assist in resolving the Court's concern about a potential rift between class

members, Plaintiffs' expert witness, Dr. Steve Pomerantz prepared a spreadsheet showing the name of each class member, hire date, and allocation of the anticipated settlement funds for each class member (before fees and expenses).[3] Dr. Pomerantz' spreadsheet will be filed herewith under seal after approval from the Court. His spreadsheet identifies 39 class members. All of the 39 class members identified by Dr. Pomerantz were hired by Defendants at least three years before the filing of Plaintiffs' Complaint. As such, all of the identified class members are subject to a similar statute of limitation argument as the one Defendants made in their mooted and denied motion for summary judgment. Accordingly, there is no rift between class members.

In the event that a few additional class members are later identified who were hired by Defendants within three years from the filing Plaintiffs' Complaint, there will still be no rift. First, the settlement was negotiated and executed without any consideration to the arguments made in Defendants' motion for summary judgment. Second, all class members benefit equally from the settlement because class members have been able to spread the expense of litigating amongst the entire class on a *pro rata* basis. Third, the settlement treats all class members the same in terms of how the Plan allocates settlement proceeds, as required by ERISA. *See Alday v. Raytheon Co.,* 619 F.Supp.2d 726, 736 (D. Ariz. 2008) (certifying class under Rule 23(b)(1)(A) in ERISA action, noting that "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner.")

---

[3] Before filing this Amended Motion, Plaintiffs sent Defendants a copy of a spreadsheet Dr. Pomerantz created that identifies the 39 class members and their anticipated allocation of the settlement. Plaintiffs also sent Defendants the source document that Dr. Pomerantz relied upon to create the spreadsheet. Plaintiffs requested Defendants to confirm the information in the spreadsheet is accurate. Defendants did not substantively respond. But the parties should easily be able to agree on the identity of class members and their anticipated allocation once a class is certified.

3.      Settlement Negotiations

The Court expressed concern that the Plaintiffs might have agreed to a settlement that favored their potentially time-barred claims over claims of other class members who did not have potentially time barred claims. (*Id.* 11:1-5.) Plaintiffs did no such thing. Again, Plaintiffs refused to discuss any of the arguments in Defendants' motion for summary judgment when negotiating the settlement. *See* McKay Declaration, at ¶ 3. The motion for summary judgment had zero impact on the settlement. *Id.* There is nothing in the record that suggests Plaintiffs agreed to a settlement that favors their claims over any other class members' claims. That simply is not the case.

4.      Under Compensating Class Members

The Court expressed concern that the settlement may undercompensate class members with "fully meritorious claims." (ECF No. 8:13-14.) Plaintiffs are not aware that Defendants have conceded any class member has a "fully meritorious" claim. Plaintiffs expect Defendants to raise a myriad of defenses to all claims by all class members should this case continue beyond settlement. When negotiating the settlement, Plaintiffs did not consider any potential individual defenses that Defendants might make to individual class members' claims. Rather, Plaintiffs treated all class members as similarly situated, consistent with Rule 23 and ERISA. No class members are being undercompensated relative to other class members.

5.      Piling Up Of Damages

The Court expressed concern that Plaintiffs could have filed their claims earlier and if they had done so "damages would have been much lower." (*Id.* at 9:21-27.) This not a concern Plaintiffs expected to see from the Court who is a fiduciary to absent class members. *See Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). Rather, this is an argument Plaintiffs would expect Defendants to make. But Defendants did not make the argument because the damages period is three years. The damages period would have been three years

if claims were filed sooner. Either way, the damages period is three years. There is no actual evidence of any piling up of damages.

6.     <u>Second Motion For Summary Judgment</u>

The Court made comments about the perceived strength of Defendants' mooted and denied motion for summary judgment. (ECF No. 62 at 11:2-5.) Given those comments, the Court may question whether Defendants will file a second motion for summary judgment and seek to extinguish Plaintiffs' and all absent class members' claims rather than settle this case as it agreed in the signed settlement agreement and to provide hundreds of thousands of dollars of benefits to Plaintiffs and absent class members. This is a fair question.

Given the extensive litigation efforts and tactics employed by Defendants thus far in this case, Plaintiffs expect Defendants to file a second summary judgment motion. The settlement agreement Defendants executed requires them to use their best efforts to finalize the settlement. If Defendants' were to file a second motion for summary judgment because of comments made by the Court, Defendants would be in breach of the settlement agreement.

If Defendants were to breach the settlement agreement because of comments made by the Court and file a second motion for summary judgment, the motion would necessarily be limited to the merits of Plaintiffs' claims and not the claims of absent class members. The class in this case has not yet been certified yet, so absent class members' claims cannot be adjudicated in a motion for summary judgment. *See Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("District courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified.")

Therefore, if Defendants were to file a second motion for summary judgment, Plaintiffs would seek leave to add absent class members as named plaintiffs. Those absent class members will testify and submit declarations showing that they had no knowledge about Defendants' alleged ERISA violations until just before or after Plaintiffs' Complaint was filed.

In addition, Plaintiffs would file a more robust opposition concerning Plaintiffs' actual knowledge. Plaintiffs' opposition would emphasize that they had no actual knowledge of the alleged fiduciary breaches. *Ziegler v. Connecticut General Life Ins., Co.*, 916 F.2d 548, (9th Cir. 1990) (holding the "inquiry into plaintiffs' actual knowledge is entirely factual, requiring examination of the record.") The Court seemed to adopt Defendants' argument on this question of disputed material fact because of cherry-picked portions of Plaintiff Draney's deposition transcript. Plaintiffs' respectfully submit, however, that Defendants mischaracterized Draney's deposition testimony. Indeed, on page 11, line 21 of Defendants' motion for summary judgment, Defendants concede that during Draney's deposition Draney denied having actual knowledge of Defendants' ERISA fiduciary breaches. (ECF No. 49.) But Defendants did not provide the Court with this portion of Draney's deposition transcript. If a second motion for summary judgment is filed as to the actual knowledge of Plaintiffs, Plaintiffs will simply provide truthful evidence to the Court the demonstrates they had no actual knowledge of Defendants' ERSIA breaches until shortly before the filing of their Complaint. The Court should not resolve this disputed question of material fact in favor of Defendants at the motion for summary judgment stage.

Further, Plaintiffs' opposition would also emphasize that the scope and breadth of Defendants' alleged ERISA violations extend far beyond Defendants' investment strategy for the Plan (which the Court seemed to suggest is accurate). For example, Plaintiffs allege in their Complaint and argue in their opposition to Defendants' motion for summary judgment, that Defendants breached ERISA's duty of prudence by failing to "*monitor* the Plan's investments and to *replace* poorly performing investments." (*Id.* at 3:25-28.) Defendants have a continuing duty to *monitor* investments and to *replace* imprudent ones. *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1068 (N.D. Cal. 2017). That duty "exists separate and apart from the duty to exercise prudence in selecting investments at the outset." *Id.* As a result, where plaintiffs "allege that a fiduciary breached the duty of prudence by failing to properly *monitor* investments and *replace* imprudent ones, the claim is "timely" so

7

long as the alleged breach of the continuing duty occurred within the limitations period. *Id.* Defendants breached their continuing duty to *monitor* investments and to *replace* imprudent investments during the three years prior to the filing of Plaintiffs' Complaint. It seems even Defendants' expert witness concedes that much. Thus, allegations concerning Defendants' failure to *monitor* and *replace* are not even subject to the statute of limitations argument in Defendants' motion for summary judgment.

In summary, it should be axiomatic that a party who signs a settlement agreement that includes mutual releases of all claims and defenses is precluded from breaching the agreement after learning a judge believes a potential meritorious defense may exist with respect to settled claims. This ought to be especially true when the Court's comments jeopardize absent class members' ability to participate in a settlement as is the case here. The motion should be denied in any event. And the motion would create further delay and unnecessary expense.

### B.   Effect Of Statute Of Limitations Defense On Class Certification: Typicality and Adequacy

The Court expressed concern that the "strong" statute of limitations defense creates two subclasses of plaintiffs: (1) a class of employees who were not aware of the Plan's holdings prior to the limitations period and whose claims are not time barred, and (2) a class of employees who were aware, and whose claims are therefore likely-time barred." (ECF No. 62, 10:4-8.) Again, there is no motion pending about any statute of limitations defense. Accordingly, there is no basis for the Court to be concerned about Plaintiffs and absent class members having claims that are "likely-time barred." Further, there is no need for two subclasses as all, or virtually all, of the class members are similarly situated with respect to the statute of limitations. Accordingly, Plaintiffs satisfy the typicality and adequacy elements of Rule 23.

Even assuming *arguendo* Defendants later contend that Plaintiffs' claims are barred by the statute of limitations, the case should still be certified. *See Beck-Ellman v. Kaz USA,*

*Inc.,* 283 F.R.D. 558, 566 (S.D. Cal. 2012) (concluding that the named plaintiff's claims were typical despite the possibility that some of her claims were subject to a time-barred defense). The possibility of individual questions regarding statute of limitations is not fatal to class certification when there is a sufficient nucleus of common questions. *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones"); *see also Cameron v. E.M. Adams & Co*., 547 F.2d 473, 478 (9th Cir. 1976) (same); *Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp*., 281 F.R.D. 422, 436 (C.D. Cal. 2012) (same); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 486 (C.D. Cal. 2012) (holding that defendant's statute of limitations defense did not raise sufficient individual inquiries to defeat class certification where plaintiffs' arguments to rebut the defense raised common questions of law and fact;) *Pace v. Quintanilla*, Case No.: CV 14-2067 DOC (RNBx), at *5-6 (C.D. Cal. July 31, 2015) (same).

Here, Defendants made no disclosures to Plan participants about the Plan from 2013 to 2018. (ECF 52 at 4:1-13.) Defendants essentially kept the Plan a secret from all Plan participants. At risk of stating a blinding glimpse of the obvious, it would have been impossible for class members to have actual knowledge of whether Defendants breached their ERISA fiduciary duties during the limitations period because Defendants made no disclosures about the Plan during the limitations period. Thus, not only is the statute of limitations no impediment to certification because there is no actual controversy pending involving the statute of limitations, but also this is an affirmative defense that affects the entire class, and if the argument were ever raised, it ought to be addressed on a class wide basis. All of the other material facts and law about the claims of Plaintiffs and absent class members are virtually identical. Accordingly, Plaintiffs easily satisfy the typicality and adequacy requirements.

### C.      Certification Under Rule 23(b)(1)

The Court found certification under Rule 23(b)(1) is inappropriate because Plaintiffs are "seeking individualized compensatory relief." (ECF 62 at 11:22-24.) However, this is not accurate. Plaintiffs Complaint was brought in a representative capacity on behalf of the entire Plan. (ECF No. 23, at ¶ 1.) Plaintiffs' claims are being pursued on behalf of the entire Plan. (*Id.*). The damages Plaintiffs are seeking are on behalf of the Plan. Plaintiffs are not seeking any individual damages. Indeed, the settlement even excludes any "individual claims for relief seeking benefits under state law." (Settlement Agreement ¶ 3.1.1.)

Although the Plan will allocate money from the settlement to class members' individual Plan accounts, the Plan's allocation does not convert the case to one for individual money damages. There are no "individualized inquiries" as to money damages. *See Wit v. United Behavioral Health*, 317 F.R.D. 106, 132-33 (N.D. Cal. 2016) (explaining that ERISA breach of fiduciary duty cases that do not involve "individualized inquiries" as to money damages ought to be certified under Rule 23(b)(1) or (b)(2)).

A very similar fact pattern was presented to the Judge Ishii in *Colesberry v. Ruiz Food Products, Inc.*, CV F 04-5516 AWI SMS at *9 (E.D. Cal. June 30, 2006). In *Colesberry*, the proposed settlement required defendants to pay money to a retirement plan, then the plan was to allocate the money to plan participant individual accounts. The parties stipulated the class ought to be certified under Rule 23(b)(1)(b). The Court requested extra briefing on the question about whether certification under Rule 23(b)(1)(b) was appropriate, or if the class was seeking individualized compensatory relief. After supplemental briefing the Court held,

> "the parties have satisfied the requirements for a Rule 23(b)(1)(B) class because this action primarily seeks monetary relief for the Plan, not the individual Plaintiffs or class members. The propriety of Rule 23(b)(1) certification in this action is confirmed by the vast number of cases in which courts have certified ERISA class

actions pursuant either to Rule 23(b)(1)(A) or Rule 23(b)(1)(B), or both." *Id.*

The same is true here. Plaintiffs claims are on behalf of the Plan. The damages and settlement is on behalf of the Plan. Although the Plan will allocate money to individual accounts, this is how virtually all ERISA class settlement function. This methodology does not convert the claims into ones for "individualized money damages."

The Court also expressed doubts about whether Plan participants pursuing separate actions would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. (ECF No. 62 at 12:26-28.) The further Court indicated that it was not clear to the Court how if one Plan participant got a judgment that Defendants violated ERISA, and a second Plan participant brought a similar claim in a separate action, and the second Plan participant's claim was dismissed how that process would impose incompatible standards of conduct on Defendants. (*Id.*)

ERISA requires fiduciaries to treat all Plan participants similarly. *Traylor v. Avnet, Inc.*, 257 F.R.D. 521, 528 (D. Ariz. 2009). If Plan participants get differing judgments concerning Defendants' administration of the Plan, those judgments would result in *per se* incompatible standards of conduct for Defendants. Courts have consistently held that "a violation of ERISA with respect to one participant generally establishes a violation with respect to all similarly situated participants." *Id.* at 528.

This is precisely why courts have uniformly held "[c]ertification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries." *Wit*, at 317 F.R.D. at 132-33. Indeed, as Judge Breyer noted in *Kanawi v. Bechtel Corp.*, "[m]ost ERISA class action cases are certified under Rule 23(b)(1)." 254 F.R.D. at 111; *see also Z.D. ex rel. J.D. v. Grp. Health Co-op.*, No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012) (stating that "[t]he Court can envision few better scenarios for certification under (b)(1)(A) or (b)(1)(B)" than claims that an ERISA fiduciary's internal policy or practice was illegal); *see also Douglin v.*

11

1  *GreatBanc Trust Co.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) ("The Supreme Court has
2  observed that actions for breach of fiduciary duties are 'classic examples' of Rule 23(b)(1)
3  cases, . . . and courts in this Circuit have indeed determined that claims for breach of fiduciary
4  duty brought under ERISA , 29 U.S.C. § § 1132(a)(2) . . . are well suited to Rule 23(b)(1).")

5      The Court relied on *Wu v. Pearson*, 277 F.R.D. 255, 261 (S.D.N.Y 2011) for the
6  proposition that the risk of varying adjudications requires a case-by-case inquiry. (ECF No.
7  62 at12:10-25.) But *Wu's* claims were brought under the Copyright Act. There is no
8  discussion of ERISA in the *Wu* opinion. The analysis in *Wu* involved review of artwork and
9  an array of individual issues not present in this case or ERISA class actions in general. *Wu*
10  is not helpful. The Court also referenced *Feinstein v. Firestone Tire and Rubber Co.,* 535 F.
11  Supp. 595, 600 n. 5 (S.D.N.Y. 1982). However, *Feinstein* is inapposite. *Feinstein* involved
12  product defect claims. There were no ERISA claims or any ERISA analysis in the *Feinstein*
13  opinion. Moreover, portion of the opinion cited by the Court provides, "[t]he only effect of
14  inconsistent decisions would be the payment of damages to some claimants but not to
15  others." This analysis does not apply here. Again, if multiple Plan participants brought
16  claims in multiple separate proceedings alleging that Defendants breached their ERISA
17  fiduciary duties owed to the Plan then the potential for varying adjudications about the same
18  facts and administration of the Plan could cripple the Plan, its participants, and Defendants.
19  Were this Court to find that "the Plan requires Defendants to act in a certain fashion, ERISA
20  would require Defendants to act in a similar fashion toward all Plan participants—the
21  quintessential (b)(1)(B) scenario." *K.M v. Regence Blueshield,* Case No. C13-1214 RAJ (at
22  *25 (W.D. Wash. Jan. 24. 2014). "If another court were to interpret the Plan differently, it
23  would trap Defendants in the inescapable legal quagmire of not being able to comply with
24  one such judgment without violating the terms of another," which is what Rule 23(b)(1) was
25  enacted to remedy. *Id.* For example, if one court found it was prudent for Defendants to only
26  offer Plan members the ability to invest in certificates of deposit and another court found it
27  was imprudent for Defendants to only offer certificates of deposit, Defendants those
28

conflicting orders would create incompatible standards for Defendants in their role as fiduciaries to the Plan.

Further, unlike in *Firestone*, there is no concern here about some class members receiving compensation but not others. Here, the Plan will allocate settlement proceeds to all class members consistent with the Plan's governing documents and as required by ERISA.

In sum, Plaintiffs satisfy both prongs of Rule 23(b)(1). But it ought to be beyond dispute that Plaintiffs satisfy Rule 23(b)(1)(B). This case, like most ERISA class actions, should be certified under Rule 23(b)(1). *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.).

### D.     Non-Opt Out Class

The Court expressed concerns about protecting absent class members and the implications of a non-opt out class. The non-opt out aspect of Rule 23(b)(1) facilitates ERISA's requirement that all Plan participants are treated similarly. In addition, the non-opt out class protects absent class members from being pressured by defendants, who are typically class members' employers, from being coerced or otherwise unduly influenced to opt out of the settlement. Of course, all class members are free to object to the settlement. They are free to articulate concerns to the Court about the settlement. This Court will undoubtedly take any objections seriously. But the non-opt out provision serves most of all to protect absent class members and Defendants who have a legal duty to treat them all similarly.

### E.     Certification Under Rule 23(b)(3)

If the Court declines to certify the class under Rule 23(b)(1) it should certify the Class under Rule 23(b)(3). *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976) (holding in cases where (b)(1) and (b)(3) apply, (b)(1) is held to govern). To certify a class under Rule 23(b)(3), Plaintiffs must also satisfy two requirements. First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Second, a class action must be superior to other available

13

methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(b)(3). Both requirements are met.

### 1. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

Here, the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. Plaintiffs allege that Defendants breached their ERISA duties of prudence to the Plan as a whole. Common questions of fact and law predominate over any conceivable individual issues.

### 2. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court should consider four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation about the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, the interests of all class members are aligned as Plaintiffs are seeking relief on behalf of the Plan as a whole and all class members are treated equally. The parties have been actively litigating this case for over three years. Many of the absent class members are aware of the litigation. None of the absent class members have commenced separate

14

litigation. Absent class members have either overtly or tacitly supported Plaintiffs and the claims in this lawsuit. The parties have reached a proposed settlement. Class members will all benefit from having the claims resolved in this matter, as opposed to potentially having to file separate claims, litigate those claims for years, and incur the fees and expenses associated with litigating those claims. As a practical matter, it would be economically irrational for absent class members to even attempt to do so given the complexity and expense of pursuing similar claims. There will be no difficulties in managing this case has a class action. The parties are able to contact and communicate with all class members. Plaintiffs have secured Defendants' signature on a proposed settlement agreement. This case could provide substantial cash compensation to class members in the very near future. That is important because many once class members receive cash payments in their respective individual accounts, they will be able to invest, grow, and increase the earnings in their respective accounts.

Accordingly, if the Court does not certify the case under Rule 23(b)(1) it should do so under Rule 23(b)(3).

## III.   PRELIMINARY APPROVAL

### A.   Adequacy Of Negotiations

The Court expressed concern because Defendants agreed to take no position on Class Counsel's anticipated application for attorneys' fees so long as class counsel do not request an award of attorneys' fees higher than 30% of the settlement amount and will instead leave Class Counsel's fees "to the sound discretion of the Court." (ECF 62 at 15:6-13.) This concern should not prevent the Court from preliminarily approving the settlement for at least the following reasons.

#### 1.   Fees are Not at Issue

The primary purpose of preliminary approval of a class action settlement is to provide class members with notice of the settlement and to provide class members with an opportunity to express their views with respect to the settlement. By informing class

members that Class Counsel may seek an award of up to 30% of the settlement amount and that Defendants will not oppose such an award, class members are armed with more information than they would have if they were informed in the abstract that Class Counsel will apply for approval of fees with no indication of what fees might be requested. In any event, Class Counsel's fees are not at issue at the preliminary approval stage. Class Counsel have not filed a fee application. No class members have objected to Class Counsel's fees. The Court is not being asked to make any rulings about fees. Class Counsel's fees should not affect preliminary approval.

### 2.     The Court Has Discretion to Award Fees

If the Court is nevertheless concerned because Defendants agreed to not contest a fee award if the fee award sought is less than 30% of the settlement this concern should be addressed at the final fairness hearing stage – after class members have had the opportunity to object to the settlement and after Class Counsel files a fee application. At that point, the Court will have the facts to make a proper decision about fees. And of course, regardless of what position Defendants do or do not take, Class Counsel's fees are left to the discretion of the Court.

### 3.     Plaintiffs' Counsel's Lodestar Already Exceeds 30% Of The Settlement

This case has been pending for over three years. The case has been highly contested at every stage. Plaintiffs defeated Defendants' multiple dismissal bids. Discovery has been robust. Both sides have produced documents. Both sides have taken depositions. Plaintiffs subpoenaed third parties for depositions and documents too. Both sides have retained industry experts who authored expert witness reports. The parties fully briefed a motion for summary judgment. The parties mediated and the negotiated for over a month before the settlement was agreed to. Frankly, this case has been more hotly contested than cases with much more money at stake. And there is still much more work to be done. Class Counsel's lodestar already exceeds $150,000 (30% of the settlement).

ERISA contains a generous fee shifting provision. As the U.S. Supreme Court declared in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), under ERISA, the Court may award attorneys' fees based solely on a showing of some degree of success. Here, even Defendants' expert witness opines six-figures of damages are proper. And Defendants' appear to have convinced the Court that at least some of the class have "fully meritorious claims." If Class Counsel were motivated only by attorney fees, Class Counsel might be motivated to allow Defendants to continue aggressively litigating this case at every turn, take the case to trial, obtain a judgment on the merits, and apply for an award of fees under ERISA and request their full lodestar and a multiplier. Class Counsel, however, are clearly not taking this approach. Class Counsel are instead attempting to secure approval of the settlement. While Class Counsel's anticipated fee request has yet to be filed, if and when it is filed, the anticipated fee request will be beyond reasonable in every aspect and consistent with Ninth Circuit precedent.

4.     Defendants Did Not Capitulate

The Court suggested the settlement may be unfair because "this appears to be a case of a defendant simply capitulating to a settlement which it finds fair from its perspective, but which may harm potential class members not represented by the named plaintiffs or their counsel." (ECF 62:22-24.) Plaintiffs have no explanation for this statement. At every stage of this proceeding Plaintiffs and Class Counsel have sought to protect and advocate for all absent class members.

Defendants are uniquely positioned, having litigated the case for over three years, to understand the amount of time and work put into this case by both sides. Defendants have likely spent far more than $150,000 in attorney fees litigating this case. And Defendants are likely aware that if Class Counsel request $150,000 in fees that such a request would be reasonable given the amount for the work Class Counsel have done in the case – and the work Class Counsel still need to do in the case. Plaintiffs are unaware of any law requiring a defendant to contest a reasonable request for fees. If Class Counsel agreed to seek no more

17

than $10 in attorney fees would Defendants be seen as capitulating if they agreed not to contest a $10 fee award? Plaintiffs respectfully submit the answer is no.

### 5.   *Briseño* Is Not Applicable

The Court relied on *Briseño v. Henderson*, 998 F.3d 104, 1018 (9th Cir. 2021) to deny preliminary approval. (ECF 14:15-20.) However, the *Briseño* Court granted preliminary approval of the class action settlement. Notice of the settlement was sent to class members. One of the class members, a law professor from the University of Michigan, objected to the settlement at the final fairness hearing. The district court granted final approval of the settlement. The objector appealed to the Ninth Circuit. Here, the Court has not preliminarily approved the settlement. No class members have been afforded the opportunity to express views about the settlement. No class member has objected to the settlement. These are critical steps in the class action settlement process. *Briseño* is simply not applicable at this stage of the proceeding.

The Court also referenced *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011). *In re Bluetooth* is also not applicable. Like *Briseño*, the *In re Bluetooth* opinion addresses standards for final approval of a class action settlement, not preliminary approval.

Moreover, the facts of both *Briseño* and *In re Bluetooth* are not even remotely similar to the facts here. There were objectors to the proposed final settlement in *Briseño* and *In re Bluetooth*. There are no objectors to the settlement here. In *In re Bluetooth,* the attorneys' fees totaled 83.2% of the total amount defendants paid to settle the case. In *Briseño* the objector argued attorneys' fees swallowed up 88% of the class actual recovery. Here, the Court has not approved any attorney fees. And here, Plaintiffs agreed to request no more than 30% of the settlement amount. But perhaps most importantly, the settlements in *Briseño* and *In re Bluetooth*, contained a reverter or a kicker. Clearing sailing agreements without fee caps (like the 30% one here) when combined with reverters or kickers should raise red flags. Some argue that unethical counsel may agree to a reverter or a kicker that

returns unawarded settlement benefits to a defendant rather than to the class in exchange for a defendant agreeing to pay counsel generous fees via a clear sailing agreement. But the settlement here contains no reverter or kicker. Here, all of the settlement funds will be provided to class members. Therefore, the "clear sailing agreement" in the settlement does not even potentially prejudice any class member. And of course, if Class Counsel seek more than 30% of the settlement, Defendants can oppose the request. So, the provision is not truly a clear sailing agreement. The settlement here also does not include any injunctive components or other non-monetary benefits that sometimes inflate the value of a settlement when counsel seek fees based on the total value of a settlement. There is no dispute or subjectivity concerning the value of the settlement. The settlement provides cash to class members. Class Counsel's anticipated fee request will be based on actual cash provided to class members, not hypothetical injunctive relief or other potentially opaque benefits. While the *Briseño* Court found that the settlement in that case "reeked of collusion at the expense of the class members" *Id.* 998 F.3d at 1018, the settlement here contains none of the actual problems identified in the *Briseño* opinion.

> 6.   Plaintiffs Stipulate Defendants May Object To A Fee Application

If the Court remains concerned at the preliminary approval stage about Defendants' agreement to leave Class Counsel's anticipated fee request to the sound discretion of the Court, so long as Plaintiffs' request no more than 30% of the settlement, Plaintiffs stipulate that Defendants may oppose any fee request Class Counsel makes.

**D.   Fairness Of Settlement Terms**

> 1.   Expert Reports

The Court expressed concern that the evidence submitted by Plaintiffs to show the settlement is within the range of reasonableness is inadequate. (ECF No. 16:27-18.) The Court requested additional information about the parties' respective experts, their methodology, analysis, and conclusions. (*Id.* at 17:1-16.)

19

AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION TO: (1) PRELIMINARILY APPROVE PROPOSED SETTLEMENT; (2) CERTIFY A SETTLEMENT CLASS; (3) APPROVE PROPOSED PLAN FOR CLASS NOTICE; AND (4) SCHEDULE FINAL SETTLEMENT HEARING

Plaintiffs retained Dr. Steve Pomerantz to calculate damages and serve as their expert witness. Dr. Pomerantz's prepared an expert report. His expert report will be filed herewith under seal after approval from the Court. As described in Exhibit 1 to his report, Dr. Pomerantz has appeared as expert witness in over 90 cases; most of these cases involved ERISA breach of fiduciary duty claims, similar to the ones here.

Dr. Pomerantz describes in his report that to calculate damages he used Morningstar to extract quarterly performance data for alternative investments that would have been available for the Plan. Plan balances were identified from statements provided from February 29, 2016 through February 28, 2019 (the limitations period). In order to calculate damages, Dr. Pomerantz compared the interest earned by the Plan's portfolio of investments with the investment return of a prudent comparator each quarter based on the prevailing asset level for each quarter. This provides a damage amount for each quarter. For example, if in a given quarter the interest earned on a certificate of deposit owned by the Plan was 0.50% and the alternative prudently managed return was 2.00%, then the damage incurred on a $5 million balance for that quarter was $75,000. After damages were calculated, Dr. Pomerantz present valued the damages to December 2020 using the returns of the comparator investments. The comparator used represents a prudently managed portfolio.

It is common for expert witnesses in ERISA cases like this one to argue about proper investment portfolio comparators when calculating damages. To avoid this argument, Dr. Pomerantz created three alternate investment portfolio comparators. Dr. Pomerantz relied on a survey of 401(k) plans to establish that the average equity allocation for 401(k) plans is 67.4% and fixed income allocation of 32.6%. The first portfolio comparator was created by using the Vanguard Total World Index and Vanguard Total World Bond Index (using a 60%/40% allocation). The second portfolio comparator was created using the Vanguard LifeStrategy Moderate Growth Fund (which is invested in roughly 60% equities and 40% fixed income). The third comparator portfolio was created using Vanguard's Target

Retirement Funds (which also contain a mix of equity and fixed income investments). The average of the three alternate investment portfolio comparators yields damages of $734,545.

Dr. Pomerantz charges $650 per hour for his services. Class Counsel have advanced Dr. Pomerantz' fees for services rendered in this case. Plaintiffs are cognizant that if these case does not settle, Dr. Pomerantz' fees – although well earned – will likely increase substantially.

Defendants retained Dr. D. Lee Heavner as their expert witness. Dr. Heavner is a well-known expert witness in ERISA class actions. His expert report will also be filed herewith under seal after approval from the Court. Dr. Heavner generally followed the methodology that Dr. Pomerantz used. But he took minor issue with some of Dr. Pomerantz' methodology. Even still, Dr. Heavner concludes class damages of $652,575. Dr. Heavner charges $900 per hour for his services.

Defendants agreed to settle this case for $500,000 in cash. The settlement here is a relatively strong one – it is easily within the range of reasonableness. First, participation in mediation tends to support the conclusion that the settlement process was not collusive. The Court ought to be reassured by the fact the parties settled only after participating in a full-day mediation with an experienced third-party neutral, and then continued to negotiate the settlement for nearly a month before an agreement was reached.

Second, the Court should consider the settlement to be an especially strong one given that the Court expressed concern over the merits of the claims at bar for the overwhelming number of absent class members.

Third, "class actions are inherently risky." *Aichele v. City of Los Angeles*, Case No. CV12-10863-DMG (FFMx) at *6 (CD. Cal. Sep. 9, 2015). The settlement removes all risk of class members taking nothing and provides immediate substantial cash payments to class members.

Fourth, the settlement provides class members with roughly 68% of their potential recovery (before fees and costs). This is an excellent recovery. District courts routinely

approve settlements that provide far less of a recovery to class members. *See Dearaujo v. Regis Corp.,* No. 2:14-cv-01408-KJM-AC at *1026 (E.D. Cal. June 29, 2016) (preliminary approval of settlement representing 37% of potential recovery); *see also In re Rite Aid Corp Sec. Litig.,* 396 F.3d 294, 298 (3d Cir. 2005) (noting statistical data that a range of approved settlement median rates from 27% to 30% of potential recoveries over the course of a two year period in selected federal district courts); *Foster v. Adams & Assoc.,* 18-cv-02723-JSC at 8 (N.D. Cal. Oct. 21, 2021) (approving settlement valued at 28.5% of maximum recovery).

Fifth, the settlement eliminates delay. This case has already been pending for over three years. Often, justice delayed is justice denied. Plaintiffs are concerned that if the settlement is not at least preliminarily approved, this case will continue to be litigated for years to come.

### 2.   Independent Fiduciary Review

The Court's concern about the fairness of the settlement will also be addressed by an independent fiduciary who will review the settlement for fairness and opine to the Court on whether the settlement is fair.

The Department of Labor has concluded that a prohibited transaction occurs when a plan fiduciary causes a plan to release a claim against a person who is a party in interest at the time of the settlement. DOL Adv. Opinion 95-26A (Oct. 17, 1995). To overcome this hurdle and facilitate ERISA settlements in such circumstances, the Department of Labor issued Prohibited Transaction Exemption, or PTE, 2003-39, which covers the release of a plan's claims in exchange for consideration from a party in interest in partial or complete settlement of actual or threatened litigation. *See* PTE 2003-39, 68 Fed. Reg. 75,632 (2003). The exemption requires a settlement to be approved and authorized by an independent

fiduciary, which acts in the plan's interest and reviews the terms of the settlement to ensure it meets certain criteria.[4]

Here, the settlement releases claims by the Plan against Alan and Steven Zwillinger. Indeed, the settlement agreement defines the Zwillingers as parties-in interest. (Settlement Agreement ¶ 1.17.) Thus, the settlement will need to be scrutinized and approved by an independent fiduciary if the Court grants preliminary approval. The independent fiduciary's report will be very helpful. By way of illustration, Class Counsel also represents a certified class of plan participants with account balances in the University of Miami 401(k) plan. *See* Mckay Decl. ¶ 8. The district court in that case granted preliminary approval of a class wide settlement. *Id.* After the court granted preliminary approval, an independent fiduciary was retained in that case to review and opine on the settlement. *Id.* The independent fiduciary's report was issued just last week. It is attached as Exhibit 1 to the McKay Declaration. Plaintiffs anticipate providing the Court with a similar report from an independent fiduciary if the Court grants preliminary approval of the settlement. That anticipated report should also allay any concern the Court has about the fairness of the settlement.

### E.   Notice To Class Members

The Court requested more information be provided to class members in the notice they will receive about the settlement if the court grants preliminary approval. Plaintiffs adopted

---

[4] The settlement must be reasonable in light of the plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone, and the terms and conditions of the transaction must be no less favorable to the plan than comparable arm's length terms and conditions that would have been agreed upon by unrelated parties under similar circumstances. *See* PTE 2003-39 §§ II(c), (d), 68 Fed. Reg. 75,639. In assessing reasonableness, the independent fiduciary must consider the entire settlement, including (1) the scope of the release of claims, (2) the value of any noncash assets to be received by the plan, and (3) the amount of any attorney's fee award or other sums to be paid from the recovery. *See* Adoption of Amendment to the Class Exemption for the Release of Claims and Extensions of Credit in Connection With Litigation (PTE 2003-39), 75 Fed. Reg. 33,830 (2010).

both of the Court's suggestions concerning augmenting the notice to class members. An amended form of Class Notice is attached as Exhibit 2 to the McKay Declaration.

The Amended Notice instructs class members to telephone Class Counsel to receive estimated payment information. *See* Exhibit 2 to the McKay Declaration, Paragraph 9 of the Amended Notice. This is private and confidential information that should not be shared in a notice sent to all class members. But Plaintiffs will share the information with individual class members. Plaintiffs will confer with Defendants to ensure the parties agree on the data. Plaintiffs will then share the information with any class members who telephone. In addition, the Amended Notice includes a table showing estimated payouts depending on the weighted average balance in class members' Plan accounts. The information in the table will also provide class members with an estimate of their anticipated recovery under the settlement.

## IV.   MEET AND CONFER

As required by Local Rule 7-3, Class Counsel participated in two lengthy discussions with Defendants' counsel concerning the issues raised in this motion. Class Counsel informed Defendants' counsel that Plaintiffs would be filing an amended motion for class certification and preliminary approval. Class Counsel articulated the main arguments in this motion to Defendants' counsel. Further, Class counsel obtained Defendants' counsel's written permission to apply to file the parties' expert witness reports under seal in connection with the amended motion. Class Counsel also emailed Defendants' counsel the spreadsheet Dr. Pomerantz created that identifies class members and contains an estimated allocation of settlement benefits for each class member. Class Counsel requested Defendants' counsel to confirm the accuracy of the data in Dr. Pomerantz' spreadsheet, or to provide additional information. Defendants' counsel did not substantively respond to the request. Class Counsel also emailed the mediator Gail A. Glick and requested her to submit a declaration in support of the amended motion. Ms. Glick agreed to submit a declaration. She emailed a draft declaration to counsel for Plaintiffs and Defendants. Ms. Glick stated that she would not sign the declaration unless counsel for both parties consented to her doing so. Defendants'

24

counsel did not substantively respond to the mediator until after the amended motion was drafted and just before it was filed. Plaintiffs satisfied its meet and confer obligations. During the meet and confer efforts, Defendants counsel indicated that Defendants would withhold taking a position on the amended motion until after it was filed. *See* Mckay Declaration ¶ 10.

**V.    CONCLUSION**

Plaintiffs express gratitude to the Court for the opportunity to submit this amended motion. Plaintiffs respectfully request the Court to certify this case as a class action, grant preliminary approval of the proposed settlement, approve the amended notice, and schedule a final fairness hearing.

DATED: March 8, 2022                    Respectfully submitted,

/s/ *Michael C. McKay*
Michael C. McKay (Pro Hac Vice)
**MCKAY LAW, LLC**
7702 E. Doubletree Ranch Rd., Ste. 300
Scottsdale, Arizona 85258
Telephone: (480) 681-7000
Facsimile: (480) 348-3999
Email: mmckay@mckaylaw.us


Shoham J. Solouki (SBN 278538)
**SOLOUKI SAVOY LLP**
316 West 2nd Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 08, 2022, I electronically transmitted the attached document to the Clerk of the Court using ECF System for filing and served on the following person(s) in the manner indicated below:

TRUCKER ♦ HUSS                  ■       by CM/ECF Electronic Mail
Joseph C. Faucher, Esq.         □       by Facsimile Transmission
Brian D. Murphy, Esq.           □       by First Class Mail
15821 Ventura Blvd. Ste. 510    □       by Hand Delivery
Los Angeles, CA 91436           □       by Overnight Delivery

                                */s/ Michael C. McKay*
                                Michael C. McKay, Esq.