O

# United States District Court
# Central District of California

| | |
|---|---|
| DANIEL DRANEY, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WESTCO CHEMICALS, INC., et al.,<br><br>　　　　　　Defendants. | Case № 2:19-cv-01405-ODW (AGRx)<br><br>**ORDER DENYING AMENDED MOTION TO CERTIFY CLASS AND PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT [66]** |

## I.  INTRODUCTION AND BACKGROUND

Plaintiffs Daniel Draney and Lorenzo Ibarra are employees of Defendant Westco Chemicals, Inc., whose principals are Defendants Ezekiel Zwillinger and Steven Zwillinger. (First Am. Compl. ("FAC") ¶¶ 14–15, 17–18, ECF No. 23.) Plaintiffs participated in Westco's 401(k) Plan, a defined-contribution, individual account pension plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. (FAC ¶¶ 1–2.) Plaintiffs allege that throughout most of the 2010s, the Zwillingers, as Westco's principals, invested the 401(k) Plan funds exclusively in low-interest-bearing certificates of deposit, failing to diversify the investments or otherwise construct a proper investment platform. (FAC ¶ 25.)

Plaintiffs allege that Westco employees missed out on over $1 million of collective fund growth as a result. (*Id.*)

Based on these and related allegations, Plaintiffs assert individual and class claims centered on two Westco retirement plans: a 401(k) Plan and a Defined Benefit Pension Plan. (FAC ¶¶ 2–3.) Plaintiffs allege claims against Defendants for (1) breach of duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (2) breach of duty of loyalty, 29 U.S.C. § 1104(a)(1)(a); and (3) failing to administer the 401(k) Plan in accordance with its terms, 29 U.S.C. § 1103. In ruling on Defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(1) Motion to Dismiss, the Court found that the FAC lacked allegations showing that the beneficiaries of the Defined Benefit Pension Plan suffered any injury-in-fact. (Order Granting Mot. Dismiss 7, ECF No. 29.) Accordingly, the Court dismissed Claims One and Two to the extent they included the Defined Benefit Pension Plan. The Court also noted the parties' apparent agreement that Claim Three did not encompass the Defined Benefit Pension Plan. (*Id.* at 7–8.) Plaintiffs did not amend, leaving only the 401(k) Plan at issue. Hereinafter, the term "Plan" refers to the 401(k) Plan only.

Thereafter, Plaintiffs moved to certify the class, and Defendants moved for summary judgment. Both motions were briefed when, on May 7, 2021, the parties informed the Court they agreed to settle the case. (Notice Settlement, ECF No. 57.) On May 28, 2021, Plaintiffs moved for preliminary approval of a $500,000 settlement and for conditional certification of a non-opt-out class of Westco employees under Rule 23(b)(1). (Mot. Prelim. Approve Settlement ("First Approval Motion" or "1st Mot.") 12, ECF No. 60.) On September 29, 2021, the Court denied that motion, detailing its concerns about whether the non-opt-out nature of the settlement made it unfair to certain class members. (Order Den. 1st Mot. 2, ECF No. 62.)

On March 8, 2022, Plaintiffs moved a second time for approval of the settlement. (Am. Mot. Prelim. Approve Settlement ("Amended Motion" or "Am. Mot."), ECF No. 66.) Although the parties did address some of the Court's prior concerns, the parties

did not make any additional modifications related to the non-opt-out nature of the class, instead arguing, often emphatically, that the Court should approve this aspect of the settlement without further modification, (*id.* at 10–13).

On May 9, 2022, the Court held a hearing on the Amended Motion. (Mins. May 9 Hr'g, ECF No. 77.) The Court provided the parties with suggestions regarding the remaining modifications that would need to be made to obtain approval, including: (1) reiterating the need to provide an opt-out mechanism for putative class members in both the settlement itself and the class notice; and (2) modifying the attorney fee portion of the settlement so that, instead of agreeing to a fixed amount of attorneys' fees to be deducted from the settlement fund, Plaintiffs would file a motion for attorneys' fees which Westco would oppose. (*Id.*)

Then, on June 21, 2022, the parties informed the Court that, to address the Court's concerns regarding attorneys' fees, they had successfully negotiated a total settlement amount $125,000 greater, or 25% higher, than previously agreed. (Status Rpt. ¶ 1, ECF No. 79.) The parties did mention modifying the settlement to provide an opt-out mechanism. (*See generally id.*)

On June 27, 2022, the Court held a brief re-hearing and confirmed that it would not certify a non-opt-out class in this matter. (Mins. June 27 Hr'g, ECF No. 81.) The Court encouraged the parties to continue settlement discussions and took the Amended Motion under submission. Herein, the Court formally **DENIES** the Amended Motion.

## II.   LEGAL STANDARD

Plaintiffs ask the Court to certify a class of Plan participants and to preliminarily approve the parties' settlement. "[A]lthough the fact of settlement is relevant to the class certification analysis, certification must nonetheless meet Rule 23(a) and (b)[] requirements . . . ." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 ("Subdivisions (a) and (b) [of Rule 23] focus court attention on whether a proposed class has sufficient unity so

that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.").

To obtain class certification under Rule 23, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Zinser v. Accufix Research Ist., Inc.*, 523 F.3d 1180, 1186 *amended* 273 F.3d 1266 (9th Cir. 2001). Rule 23(a) provides that a district court may certify a class only if the class satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the plaintiff must "satisfy through evidentiary proof" the existence of at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). When a class is certified under Rule 23(b)(3), class members must be provided a way of opting out of the class; when a class is certified under Rule 23(b)(1) or (b)(2), class members need not be provided with an opportunity to opt out. *Id.* at 34; *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). Of greatest relevance here, a class is certifiable under Rule 23(b)(1) only when:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate . . .

compliance with the Rule." *Id.* Under both Rule 23(a) and Rule 23(b), "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Behrend*, 569 U.S. at 33; *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351). If the court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

### III.   DISCUSSION

The record is now replete with Plaintiffs' strenuous, repeated objections to the Court's refusal to approve this settlement. These objections center on two main contentions: first, that the settlement is reasonable, and the Court is therefore unreasonable in rejecting it; and second, that the Court acts in derogation of the fiduciary duties it owes to absent class members by rejecting the settlement. (*See, e.g.*, Pls.' Notice re: Settlement, ECF No. 82 ("[T]he Court, acting as a fiduciary to the putative class, refused to preliminarily approve [the] settlement . . . . Defendants have taken similarly unreasonable positions throughout this case.").) The Court provides this analysis in order to clarify that the Court's inability to approve this settlement is neither based on neither the Court's own views regarding what is reasonable nor considerations of fiduciary duty. Instead, it is based on the limitations of the Federal Rules of Civil Procedure. The Court is bound by the Rules in all matters, and the Court may not ignore the Rules merely because the parties so stipulate, even when ignoring a Rule might possibly result in a net benefit. Here, the Rule at issue is Rule 23(b).

**A.   The nature of this suit and settlement is one for individualized money damages.**

Under Rule 23(b), the Court cannot certify a non-opt-out class unless the parties demonstrate to the Court that the class action fits the description found in either Rule 23(b)(1) or (b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); Fed. R. Civ. P. 23(c)(2)(B)(v). Preliminarily, certification under Rule 23(b)(2) is inappropriate here because the primary relief sought in this case is not injunctive or

declaratory in nature; in 2018, Westco modified the Plan's investment strategy, and Plaintiffs do not seek any sort of injunction or declaration ordering Westco to alter its investment strategy at this time. (*See* Order Den. 1st Mot. 11.)

As for certification under Rule 23(b)(1), quoted above, Plaintiffs argue that such certification is appropriate because Plaintiffs seek compensation "in a representative capacity on behalf of the entire Plan. Plaintiffs' claims are being pursued on behalf of the entire Plan. The damages Plaintiffs are seeking are on behalf of the Plan." (Am. Mot. 10.) But this generalized assertion belies the specific details of the settlement in this case. Those details indicate that this is not an action brought on behalf of the Plan but is instead an action brought on behalf of each of the thirty-nine individuals invested in the Plan.

The way the parties propose to distribute settlement funds to invested employee class members is key to this conclusion. Under sections 7 and 8 of the Settlement Agreement, entitled "Settlement Consideration" and "Plan of Allocation," respectively, the settlement funds first go into a settlement account, from which attorneys' fees and other costs and expenses are then removed. Next, "[f]or Class Members with an active account in the Plan, each Class Member's final entitlement amount will be allocated into their Plan account" by the Plan Administrator, as directed by the Settlement Administrator. (Settlement Agreement § 8.2.4, ECF No. 60-1.) The Plan Administrator will then invest the funds according to the class member's investment elections on file for new contributions. (*Id.*) If the class member has no election on file, the funds "shall be invested in any default investment options designated by the Plan, and if the Plan has not designated any default investment options, in a target date fund commensurate with the class member's retirement age or similar fund under the Plan." (*Id.*) Class members without an active account in the Plan will receive their funds by check. (Settlement Agreement § 8.2.6.)

Crucially, the Plan Administrator has no discretion with regard to how settlement funds are allocated among individual class members. The Settlement Administrator

will tell the Plan Administrator how much money to allocate to each class member, and the Plan Administrator will account for that amount as a new contribution to that member's retirement account, to be invested according to a set of rules that provide the Plan Administrator with little to no discretion regarding how the funds will be invested.

Plaintiffs argue that "[a]lthough the Plan will allocate money from the settlement to class members' individual Plan accounts, the Plan's allocation does not convert the case to one for individual money damages." (Am. Mot. 10.) Despite this contention, however, the proposed method of allocation appears to be the key feature that converts this case to one for individual money damages. The parties do not propose to disburse the settlement funds to the Plan in general, which would benefit the Plan as a whole and then eventually trickle down to the investors by way of better returns. Instead, settlement funds would be disbursed to each individual employee, to be invested by the Plan Administrator according to a rigid set of directions. (*Cf.* Am. Mot. 19 ("The settlement provides cash to class members.").) Individual employees would thereby receive individual amounts meant to make them whole and individually compensate them for the breaches Westco committed in managing their investments. The fact that class members without an active retirement account will receive their funds by check confirms that the character of the action is one for individual money damages. And because this is an action for individual money damages, it is not appropriate for Rule 23(b)(1) certification.

**B.     There is no risk of inconsistent obligations on Westco.**

Undeterred, Plaintiffs reiterate the principle that ERISA requires fiduciaries to treat all Plan participants similarly, and that this principle requires the Court to certify the class as a non-opt-out class. (Am. Mot. 11.) Plaintiffs argue that "[i]f Plan participants get differing judgments concerning Defendants' administration of the Plan, those judgments would result in per se incompatible standards of conduct for Defendants." (*Id.*)

The Court remains unconvinced. The risk establishing incompatible standards of conduct refers to more than the chance that one individual's claim might have precedential effect on another individual's claim; it refers specifically to "the situation where 'different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct.'" *Zinser*, 253 F.3d at 1193 (quoting 7a Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1773 at 431 (2d ed. 1986)). Otherwise, arguably, all class actions are categorically appropriate for Rule 23(b)(1)(A) certification, because all class actions present the possibility that two different courts might come to opposite findings with respect to two separate class members, were those class members to try their claims separately. *See id.* (clarifying that incompatible standards of conduct refers to more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts"). Key to this particular conclusion is that Westco has already changed its investment strategy, and Plaintiffs do not seek any kind of injunction. Draney and Ibarra simply seek money for each of themselves and for other class members, to be placed into individual investment accounts and appropriately invested, with the intent of placing each individual where they would be had Westco prudently managed their investments.

Thus, even if two potential employee class members were to have their suits tried separately, with one court finding for the employee and the other court finding for Westco, there would still be no incompatible standard of conduct for Westco. Westco would simply deposit funds into one employee's retirement account and not do so for the other employee. It is possible for Westco to take both actions simultaneously. Moreover, in paying one employee and not the other, Westco would not run afoul of the requirement under ERISA that it treat all plan participants similarly. *See Traylor v. Avnet, Inc.*, 257 F.R.D. 521, 528 (D. Ariz. 2009). Plaintiffs disagree, but their argument, if accepted, would imply that a judgment against Westco in favor of a particular employee for some past ERISA violation requires Westco to retroactively

provide compensation for all employees who were also harmed by the same ERISA violation. (*See* Am. Mot. 11.) This would essentially convert a large number of ERISA class actions into *de facto* claims reprocessing suits[1], a result that finds no support in the cases Plaintiffs cite.

If anything, the case Plaintiffs cite, *Traylor*, cuts against their position. In *Traylor*, the Court considered whether to certify a subclass under Rule 23(b)(1)(A) or Rule 23(b)(2) and noted that certification of claims for monetary damages might be proper under Rule 23(b)(2) in circumstances where the monetary claims are "secondary to the primary claim for injunctive or declaratory relief." 257 F.R.D. at 528. The *Traylor* court found that the subclass's primary goal was "monetary relief in the form of payment of the balance of their lump sum benefit" which would require "individual calculations." *Id.* The court went on to refuse to certify the class under either Rule 23(b)(1)(A) *or* Rule 23(b)(2), for reasons very similar to those articulated herein. *Id.* Here, Westco has always treated its plan participants similarly, first by investing their funds in low-interest-bearing certificates of deposit, and then by transitioning to a more diversified investment strategy sometime in 2018.

Therefore, the class is certifiable under neither subpart (A) nor (B) of Rule 23(b)(1).

**C.     Plaintiffs' ERISA cases are unpersuasive.**

Plaintiffs cite cases supporting their contention that this ERISA class action should be certified under Rule 23(b)(1)(A), (b)(1)(B), or (b)(2), but Plaintiffs' cases are all distinguishable. For example, Plaintiffs cite *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008), but *Kanawi* only confirms the distinction between cases brought on behalf of a plan and cases brought on behalf of individuals. The gravamen of the allegations in *Kanawi* was that the plan administrators had engaged in prohibited transactions with the plan's service provider, causing the plan to incur excessive fees and expenses. 254 F.R.D. at 105. The Court noted that the plaintiffs' claims did "not

---

[1] *See, e.g.*, *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486 (N.D. Cal. 2017).

focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the Master Trust." *Id.* at 109. But this case, by contrast, is not one where Plan participants seek to have a lump sum returned to the Plan's overall pool of assets; instead, the settlement focuses squarely on injuries to each individual account and how those injuries will be remedied, which includes by a direct check payment for those individuals no longer in the Plan. Similarly, in *Kanawi*, the court noted that, in both that case and in another case to which the court was analogizing, "[i]f the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed." *Id.* (citing *Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694, at *5 (W.D. Mo. Dec. 3, 2007)). Here, the Plan administrator has little to no discretion in the distribution of the settlement funds and instead is directed to invest the funds according to a rigid set of directions that focus primarily on the participant's own investment instructions.

Draney also cites *Colesberry v. Ruiz Food Prods., Inc.*, No. CV F 04-5516 AWI SMS, 2006 WL 1875444 (E.D. Cal. June 30, 2006), in which the district court certified a mandatory class of ERISA plan participants under Rule 23(b)(1)(B). But the key difference is that, as part of the settlement of that case, which was brought on behalf of over 1,200 employees, the employer agreed to pay $5,250,000 into the plan as a whole. *Colesberry*, 2006 WL 1875444, at *2. There was no additional agreement, as there is here, that the funds would then be distributed to individual employee accounts as directed by the Settlement Administrator and according to the size of each individual account at a given time. *Compare id.* at *4 (reiterating that "[t]he relief which Plaintiffs seek from Defendants would ensure that the Plan was made whole") *with* (Am. Mot. 19 ("The settlement provides cash to class members.")). The court in *Colesberry* held that "the parties have satisfied the requirements for a Rule 23(b)(1)(B) class because this action primarily seeks monetary relief for the Plan, not the individual Plaintiffs or class

members." *Id.* at *5. By contrast, the present action and settlement are primarily directed toward individual monetary relief, so the holding here is not the same.

Draney otherwise fails to cite any ERISA class action where class members sought individualized monetary compensation and the court certified the class as a mandatory, non-opt-out class. Without the benefit of any such case, the Court cannot be certain that granting certification of a non-opt-out class would extend the non-opt-out mechanism past that contemplated by the Rules and case law.

**D.     The non-opt-out nature of the settlement generates due process concerns.**

The Court has previously explained the relationship between the opt-out question and Westco's previously-raised statute of limitations defense. In short, due to the operation of ERISA's statute of limitations, some employees' claims might be time-barred while others' claims were clearly not time-barred. The obviously non-time-barred employees have clearly meritorious cases, and it would be unfair for this Court to *require* them to enter this lawsuit—in which they will only get a partial recovery—when they might be able to get a complete recovery by pursuing their claims individually. This concern remains unresolved, even with the modifications as currently proposed.

That said, even *without* the statute of limitations issue, the concerns with a non-opt-out class remain intact and relevant. As a rough estimate, the settlement as currently proposed will provide class members with 68–76% of the damages they could have recovered at trial, after accounting for attorneys' fees and other deductions. (*See* Status Rpt. ¶¶ 1–3.) Although this is a generally good result for a class action, an individual employee whose account lost tens of thousands of dollars over the years might not be satisfied with a settlement that is around 30% lower than what that employee might

have obtained individually. The Court cannot simply assume that such employees do not exist, and it is not free to simply take counsel's word on the matter.[2,3]

Thus, in order to comport with both the Rules and constitutional due process, this class must be an opt-out class. *See Dukes*, 564 U.S. at 362–63 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3). . . . In the context of a class action predominantly for money damages we have held that absence of notice and opt out violates due process." (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, (1985))).

**E. The Court must respect both the Rules and due process and must accordingly reject the settlement.**

The Court has made a focused effort since the parties first reached settlement to emphasize that the total value of the settlement may very well be reasonable, and the Court has done its best to encourage the parties to agree to modifications that would allow the Court to approve the settlement consistent with the Court's own obligations under the Rules. (*See* Order Den. 1st Mot. 19 ("This Court emphasizes that . . . nothing

---

[2] This analysis also illuminates why, despite Plaintiffs' remonstrations, neither Draney nor Ibarra nor Westco nor anyone's counsel can waive the statute of limitations defense on behalf of an entire non-opt-out class. If the defense does not apply to some members of that class, those class members will be prejudiced by the waiver, while other class members (and possibly Westco) will benefit.

[3] It continues to appear to the Court that Plaintiffs' application of the ERISA limitations periods to this action is too simplistic. Plaintiffs would read ERISA § 413(2), 29 U.S.C. § 1113(2), as a mere three year look-back period that (1) allows employees to sue to recover for wrongful actions their plan administrator took any time in the past three years and (2) prevents recovery for violations that took place over three years ago. But ERISA already has its version of a look-back period at § 413(1). Under § 413(1), employees cannot recover for violations that took place over six years ago. If § 413(2) is also read as nothing more than a look-back period, then § 413(1) and § 413(2) do not harmonize, and one of the code sections is rendered surplusage. Courts generally should read statutes so that "all parts [fit] into a harmonious whole," *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), and in a way that avoids surplusage, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012). Thus, the three-year provision at § 413(2) is not a look-back period and instead functions according to its text: it prevents an employee who has known about an ERISA violation for over three years from bringing claims. Importantly, under a proper application of § 413, it is possible that some Westco employees who did not know the Plan was invested in certificates of deposit might be able to recover for up to <u>six</u> years of bad investment practices. This observation further underscores the significant differences in relief that might be available to such employees—differences this Court should not paint over by certifying a non-opt-out class.

in the record suggests the total settlement amount of $500,000 is patently or necessarily *un*reasonable.").) Despite good-faith efforts, the parties have not been able to negotiate such modifications, and as a result, the only way for the Court to approve this settlement is by violating the Federal Rules of Civil Procedure. The Court cannot and will not take such action. The Court thus necessarily rejects the settlement as presented by the Amended Motion and as altered by the recent Joint Status Report and accordingly **DENIES** the Amended Motion for Preliminary Approval.

## IV.   CONCLUSION

For these reasons, the Court **DENIES** the Amended Motion for Preliminary Approval. (ECF No. 66.)

Within **thirty (30) days** of the date of this Order, the parties shall file:

(1) a second amended settlement approval motion; or

(2) a Status Report proposing a new trial date, with a briefing schedule for any motions the parties intend to file; or

(3) other such documents as may move the proceedings forward.

Failure to timely comply with this Order may result in dismissal of this case for failure to prosecute.

**IT IS SO ORDERED.**

August 10, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

13