O

# United States District Court
# Central District of California

| | |
|---|---|
| DANIEL DRANEY et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCO CHEMICALS, INC. et al., <br><br> Defendants. | Case № 2:19-cv-01405-ODW (AGRx) <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [87], DENYING AS MOOT MOTION TO CERTIFY CLASS [95], AND DISMISSING FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiffs Daniel Draney and Lorenzo Ibarra bring suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") against their employer, Defendant Westco Chemicals, Inc., and its principals, Ezekiel Zwillinger and Steven Zwillinger, for mismanaging an employee defined-contribution pension plan. Defendants now move for summary judgment on the grounds that ERISA's three-year statute of limitations bars Draney's and Ibarra's claims. (Mot. Summ. J. ("Motion") or ("Mot."), ECF No. 87.) The Court carefully considered the papers filed in connection with the Motion and deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons that follow, the Court **GRANTS** the Motion.

## II. FACTUAL BACKGROUND

As employees of Westco, Draney and Ibarra participated in Westco's 401(k) Plan, a defined-contribution, individual account pension plan subject to ERISA. (Defs.' Statement of Uncontroverted Facts ("SUF") 2, 4, 20, 21, ECF No. 87-8; First Am. Compl. ("FAC") ¶¶ 1–2, ECF No. 23.) Throughout most of the 2010s, the Zwillingers invested Plan funds exclusively in low-interest-bearing certificates of deposit ("CDs"), without diversifying the Plan's investment portfolio. (SUF 5, 7–8, 11; FAC ¶ 25.) Plaintiffs allege that Westco employees missed out on over $1 million of collective fund growth as a result. (FAC ¶ 25.)

Draney first became a Plan participant in 2010. (SUF 4.) Before he elected to participate in the Plan, he was aware that the plan was invested solely in CDs and cash. (SUF 5; *see* Pls.' Statement of Genuine Disputes ("SGD") 16, ECF No. 89-1.) At first, he chose not to invest in the Plan because, in his words, its "earnings were too low," (SUF 14), but he eventually became a Plan participant as part of his overall tax and savings strategy, (SUF 15).

In 2010 and 2011, Draney had conversations with almost every employee in the company about the Plan's investment strategy, and according to Draney, most Westco employees were dissatisfied with the Plan's investment in CDs. (SUF 17–18.) There was a "running joke" among Westco employees regarding the Plan's investment in CDs, and "virtually everyone" at the company was aware of it. (SUF 19.) Until 2018, when the Zwillingers changed the Plan's investment strategy, Draney maintained an understanding that the Plan remained invested solely in CDs. (SUF 7–9.)

Ibarra became a Plan participant by no later than 2009. (SUF 21.) In 2008 and 2011, Ibarra received participant statements showing the Plan's assets were invested in cash or CDs. (SUF 22.) Ibarra saw at least one of these statements. (SUF 23.)

## III. PROCEDURAL BACKGROUND

On February 25, 2019, Plaintiffs filed their initial Complaint, asserting individual and class claims arising from two Westco retirement plans: the aforementioned

2

401(k) Plan and a separate Defined Benefit Pension Plan. (FAC ¶¶ 2–3.) Plaintiffs brought claims against Defendants for (1) breach of duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (2) breach of duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); and (3) failing to administer the 401(k) Plan in accordance with its terms, 29 U.S.C. § 1103. In ruling on Defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(1) Motion to Dismiss, the Court found that the FAC lacked allegations showing that the beneficiaries of the Defined Benefit Pension Plan suffered any injury-in-fact. (Order Granting Mot. Dismiss 7, ECF No. 29.) Accordingly, the Court dismissed Claims One and Two to the extent they were premised on mismanagement of the Defined Benefit Pension Plan. (*Id.*) For the remainder of this Order, the term "Plan" refers to the 401(k) Plan only.

Thereafter, Plaintiffs moved to certify the class, and Defendants moved for summary judgment. Both motions were briefed when, on May 7, 2021, the parties informed the Court they agreed to settle the case. (Notice Settlement, ECF No. 57.) On May 28, 2021, Plaintiffs moved for preliminary approval of a $500,000 settlement and conditional certification of a non-opt-out class of Westco employees under Rule 23(b)(1). (Mot. Prelim. Approve Settlement ("First Settlement Mot.") 12, ECF No. 60.) On September 29, 2021, the Court denied that motion, detailing its concerns about whether the non-opt-out nature of the settlement made it unfair to certain class members. (Order Den. First Settlement Mot. 2, ECF No. 62.)

On March 8, 2022, Plaintiffs moved a second time for approval of the settlement. (Am. Mot. Prelim. Approve Settlement ("Am. Settlement Mot."), ECF No. 66.) Ultimately, the Court again denied the Motion, reasoning that the mandatory, non-opt-out nature of the proposed class was inappropriate because (1) Plaintiffs sought individualized monetary compensation and (2) potential conflicts existed between class members whose claims were time-barred and those whose claims were not. (Order Den. Am. Settlement Mot., ECF No. 84.) The parties could not reach agreement on a settlement involving an opt-out class, (*see* Pl.'s Notice re: Settlement, ECF No. 82;

3

Defs.' Resp., ECF No. 83), and accordingly, the Court restored the case to active status and re-set a trial date, (Order Restoring Case Active Status, ECF No. 86).

Now, Defendants move for summary judgment on the grounds that the ERISA three-year statute of limitations bars the claims of individual Plaintiffs Draney and Ibarra. The Motion is fully briefed. (Opp'n, ECF No. 89; Reply, ECF No. 92.)

## IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, and the moving party may meet this burden with arguments or evidence or both. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Franciscan Ceramics*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Provided the moving party has satisfied its burden, the court should grant summary judgment against a party who fails to present evidence establishing an essential element of its claim or defense when that party will ultimately bear the burden of proof on that claim or defense at trial. *See Celotex*, 477 U.S. at 322.

In ruling on summary judgment motions, courts draw all reasonable inferences in the light most favorable to the nonmoving party, refraining from making credibility determinations or weighing conflicting evidence. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal. 2004).

## V. DISCUSSION

As a preliminary matter, Plaintiffs stipulate to judgment in Defendants' favor on Plaintiffs' third claim for failure to administer the Plan in accordance with its terms. (Opp'n 12.) The Court therefore grants summary judgment as to this claim. The remaining issue is whether the two remaining claims—for breach of duty of prudence and breach of duty of loyalty—are barred by 29 U.S.C. § 1113, ERISA's statute of limitations.

### A. Duty of Prudence

Plaintiffs' first claim is for breach of the duty of prudence that ERISA plan fiduciaries owe under 29 U.S.C. § 1104(a)(1)(B). (FAC ¶¶ 57–67.) "Retirement plans governed by ERISA must have at least one named fiduciary, who must manage the plan prudently . . . ." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 773 (2020) ("*Sulyma II*") (citation omitted). In discharging this duty, plan fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

The ERISA statute of limitations provides that an action under ERISA, including one for breach of the duty of prudence, is time-barred after the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation[.]

5

29 U.SC. § 1113. This same provision of ERISA sets forth an exception that applies "in the case of fraud or concealment," but neither party argues that this exception applies here. (Mot. 11–12; *see* Opp'n 1–3.)

To determine a claim's accrual date under 29 U.S.C. § 1113(2), courts first "isolate and define the underlying violation upon which the plaintiff's claim is founded." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1052 (9th Cir. 2020) (quoting *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1072–73 (9th Cir. 2018) ("*Sulyma I*"), *aff'd*, *Sulyma II*). Second, courts determine "'when the plaintiff had "actual knowledge" of the alleged breach or violation,' and whether suit was filed within three years of the date that knowledge was obtained." *Id.* (quoting *Sulyma I*, 909 F.3d at 1073); 9 U.S.C. § 1113(2).

### 1. *Isolation and Definition of Underlying Violation*

Regarding step one of this two-step analysis, Defendants argue that the Court should isolate and define the underlying violation as Defendants' decision to invest Plan funds entirely and solely in CDs. (Mot. 10 ("Plaintiffs' primary allegation relating to Defendants' purported breach of fiduciary duty is that Defendants invested nearly all of the Plan's assets in CDs, thereby causing the Plan to have 'a smaller dollar amount of assets than it would have had the [P]lan assets been invested differently.'" (quoting Decl. Joseph Faucher ISO Mot. ("Faucher Decl.") Ex. A ("Draney Dep.") 44:16–21, ECF No. 87-3)).)

Plaintiffs disagree and argue the Court should isolate and define the underlying violations differently, as either (1) each individual purchase or sale of a CD, or (2) the various breaches of Defendants' duty to monitor that occurred on an ongoing basis throughout the 2010s as Defendants maintained their allegedly insufficient investment strategy. (Opp'n 4–7, 12.) As to this latter category, Plaintiffs argue that Defendants' breaches of the duty to monitor include (1) failing to hire a professional investment advisor; (2) failing to possess the requisite expertise to manage a pension plan; (3) failing to hire a professional recordkeeper; (4) failing to possess the requisite

expertise to keep records for the Plan; (5) failing to design and implement a process to ensure the Plan complied with ERISA; and (6) failing to monitor and replace poorly performing investments. (Opp'n 4–7; FAC ¶ 61.)

Plaintiffs' argument is not well taken. Even if one or more of these events qualifies as an underlying violation that could theoretically trigger the start of a new limitations period, the triggering of any such period would not operate to revive a claim that already expired under § 1113(2) due to actual knowledge of a breach and the passage of three years. "Section 1113(2) is a statute of limitations, which 'encourage[s] plaintiffs to pursue diligent prosecution of known claims.'" *Sulyma II*, 140 S. Ct. at 774 (quoting *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017)); *Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) ("*Tibble II*") (noting § 1113(2) operates to keep a plaintiff with actual knowledge of a breach "from sitting on her rights and allowing the series of related breaches to continue"). In particular, "[w]hen an ERISA breach is ongoing such that it may be characterized as multiple violations, 'the earliest date on which a plaintiff became aware of *any* breach starts the limitation period of section 1113 running.'" *Sulyma I*, 909 F.3d at 1078 (quoting *Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (1991)) (emphasis added) (cleaned up). Consistent with these principles, plaintiffs may not rely on a "continuing breach" theory to overcome ERISA's three-year statute of limitations where the alleged breaches are all of the same character and the plaintiff knew of early breaches more than three years before bringing suit. *Phillips*, 944 F.2d at 520 ("While the trustees' conduct may be viewed as a series of breaches, all were of the same character: a failure to amend vesting rules. Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new."), *as amended* (Dec. 6, 1991), *cert. denied*, 504 U.S. 911 (1992).

Applying this principle here, the individual purchases and sales of CDs that happened throughout most of the 2010s were all of the same character, such that Draney's or Ibarra's knowledge of additional purchases and sales of CDs would have

imparted to them "nothing materially new" about Defendant's underlying lack of prudence. *Id.* The same is true of Defendants' various alleged breaches of the duty to monitor. These breaches were all of the same character because they are derivative of and arise out of the original breach, which was Defendants' decision, unchanged throughout most of the 2010s, to maintain a CDs-only investment strategy. Thus, for example, if a Plan participant knew in 2010 that the Plan was invested entirely in CDs, and then in 2016 that participant gained some sort of newfound knowledge that Defendants were at that point failing to "monitor or replace poorly performing investments," it would not be the case that a new limitations clock would begin in 2016. The participant's newfound knowledge would have imparted nothing new, because that participant already knew, back in 2010, that the Plan was CDs-only, and the participant could have acted to compel the plan administrator to replace the investments at that time.

Moreover, this is not the type of duty-to-monitor case where a material change in circumstances caused the accrual of a new and different cause of action with an independently running limitations or repose period. As a contrasting example, in *Baird v. BlackRock Institutional Trust Co.*, 403 F. Supp. 3d 765 (N.D. Cal. 2019), the plaintiffs alleged that their plan's fund underperformed by 20% over time compared to objective benchmark indices. 403 F. Supp. 3d at 772, 780. The court first noted that these allegations, without more, would not necessarily establish that the fund was "an imprudent choice at the outset." *Id.* (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)). Even so, the court explained, fiduciaries nevertheless have a duty to "monitor investments and remove imprudent ones." *Id.* (quoting *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017)). The court found that the plaintiffs stated a claim for breach of the duty to monitor because it was plausible that the underperformance of the fund *over time* constituted new information that was not available to the plan administrators when they first chose to make the funds available to plan participants. *See id.* ("Plaintiffs allege more than just underperformance and a

fee differential."). By alleging that the plan administrators ignored or failed to act upon this *new* information, the plaintiffs in *Baird* stated a timely claim for the plan administrators' breach of the duty to monitor. *Id.*; *see also Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) ("*Tibble I*") ("[T]he trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely." (quoting A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 684, pp. 145–146 (3d ed. 2009)).

Here, on the other hand, no party suggests that anything new happened (in the market or elsewhere) in the mid-2010s that might have made a CDs-only investment strategy an imprudent strategy where it was not before. To the extent Defendants had an obligation to review the Plan's portfolio and diversify its investments, that obligation existed from the Plan's very genesis, and certainly by 2010 or 2011. Nothing new happened in the interim, and any continuing breaches were "of the same kind and nature." *Phillips*, 944 F.2d at 521.

At root, Plaintiffs are arguing for a new rule that would require courts to ignore the fact that a three-year § 1113(2) limitations period has run merely because the plaintiff points to a breach of a derivative duty to monitor that may have happened more recently. But such a rule does not comport with case law; *Phillips* is very clear on this point. *Id.* ("[I]f the breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, § 1113[](2) bars the action."). And *Phillips* is still good law, even after *Sulyma I* and *Sulyma II*. *See Sulyma I*, 909 F.3d at 1074 (discussing *Phillips* and distinguishing it on the basis that actual knowledge of the breach was not at issue); *Sulyma II*, 140 S. Ct. at 779 (affirming *Sulyma I*).

The parties engage with the *Tibble* series of cases on this point, including the cases the Court has labeled herein as *Tibble I* and *Tibble II*. For purposes of this Order, it suffices to say that *Tibble I* and *Tibble II* contribute nothing to today's discussion for the simple reason that actual knowledge was not at issue. Thus, *Tibble I* and *Tibble II*

dealt only with 29 U.S.C. § 1113(1) and not § 1113(2). *Tibble I*, 575 U.S. at 525 (framing issue for decision as "whether a fiduciary's allegedly imprudent retention of an investment is an 'action' or 'omission' that triggers the running of the 6-year limitations period (quoting 29 U.S.C. § 1113(1)); *Tibble II*, 843 F.3d at 1196 n.3 ("The district court held that . . . § 1113(2) [was] inapplicable. . . . We affirmed . . . . The Supreme Court also applied § 1113(1).").

The Supreme Court has described § 1113(1) as a "statute of repose," *Sulyma II*, 140 S. Ct. at 774, reflecting the legislature's intent "that a defendant should be free from liability after the legislatively determined period of time," *ANZ Sec.*, 137 S. Ct. at 2049, regardless of when a plaintiff may have learned of pertinent information. Because the plaintiffs in the *Tibble* cases did not have knowledge of the underlying transactions or decisions, the § 1113(2) three-year statute of limitations was not at issue, and the *Tibble* tribunals never had occasion to consider the interplay between the earlier running of a three-year limitations period and the later running of a derivative limitations or repose period. The same is true of *Terraza*, cited by Plaintiffs; in that case, the defendants did not argue that the plaintiff had actual knowledge, and the plaintiff "affirmatively allege[d] that she did not have such knowledge until shortly before th[e] lawsuit was filed." 241 F. Supp. 3d at 1069. Here, by contrast, the three-year statute of limitations—§ 1113(2)—*is* at issue with respect to both Draney and Ibarra, because, as will be explained in the next section, the evidence shows it is undisputed that both Draney and Ibarra had the requisite actual knowledge at a point in the past.

To summarize, the Court has isolated and defined the underlying violation as the investment of the Plan solely in CDs, and has rejected the argument that later similar transactions and related or derivative breaches of the duty to monitor qualify as underlying violations triggering new limitations periods that supersede or invalidate an earlier expiration under § 1113(2). Thus, if, more than three years before commencing suit, Draney and Ibarra had actual knowledge that the Plan was invested solely in CDs, then § 1113(2) "bars the action," *Phillips*, 944 F.2d at 521, even if they point to later,

related, derivative breaches that may have taken place. *See Tibble II*, 843 F.3d at 1196 ("When a plaintiff has actual knowledge of a breach, § 1113(2) operates to keep her from sitting on her rights and allowing the series of related breaches to continue.").

### 2. *Plaintiffs' Actual Knowledge*

The Court now considers whether each named Plaintiff had knowledge of the defined underlying violation—the investment of the Plan in CDs—more than three years before the Complaint was filed. *Guenther*, 972 F.3d at 1052.

#### a. Draney

The Court first considers whether Draney knew, more than three years before bringing suit, that the Plan was invested solely in cash and CDs. 29 U.S.C. § 1113(2). Draney does not dispute that by 2011 at he latest he was aware of how the Plan was invested—that is, that he was aware that the Plan was invested solely in cash and CDs. (*See, e.g.*, SUF 16.) The § 1113(2) three-year statute of limitations thus ran by 2014 at the latest, well before he brought suit in 2019. *Compare In re Northrop Grumman Corp. ERISA Litig.*, No. 2:06-cv-06213-MMM (JCx), 2015 WL 10433713, at *23 (C.D. Cal. Nov. 24, 2015) ("*In re Northrop*") (concluding plaintiff's continuing violation theory "founders on the plain language" of ERISA's three-year statute of limitations (quoting *Phillips*, 944 F.2d at 520), where discrete deductions of excessive fees from participant investments were "of the same character"), *with Marshall v. Northrop Grumman Corp.*, No. 2:16-cv-06794-AB (JCx), 2017 WL 2930839, at *11 (C.D. Cal. Jan. 30, 2017) (recognizing, on motion to dismiss, a duty-to-monitor claim, and finding claim timely, where changes in circumstances caused corresponding change in prudence of investments).

Draney knew in 2010 or 2011 that the Plan was invested solely in cash and CDs, and any breaches of the duty of prudence that happened after that time, including any alleged failure to monitor, were merely breaches of the same kind and nature. Thus, a three-year statute of limitations began to run in 2010 or 2011, and the period was not altered or reset by any future breaches. Draney's duty of prudence claim, filed in 2019,

is time-barred. The Court correspondingly grants Defendants' Motion as to Draney's duty of prudence claim (Claim One) and dismisses Draney's claim with prejudice.

        b.     Ibarra

The Court next considers whether Ibarra knew, more than three years before bringing suit, that the Plan was invested solely in cash and CDs. 29 U.S.C. § 1113(2).[1] Unlike with Draney, the issue of when Ibarra gained "actual knowledge" is in dispute, at least nominally. (*See* Opp'n 10.) To determine whether this dispute precludes summary judgment, the Court must consider (1) whether there is a factual dispute over what Ibarra knew, and, given that there is not, (2) whether Ibarra's undisputed knowledge constitutes "actual knowledge" under § 1113(2).

        i.     <u>No genuine factual dispute about what Ibarra knew</u>

What the parties do not dispute is that (1) "[a]round 2011, Mr. Ibarra had seen at least one participant statement showing the Plan's assets were invested in cash or CDs," and (2) Ibarra is able to read "some" English. (SUF 23, 24.) The Participant Statement is only five pages long, and the last page clearly shows the CDs-only investment strategy:

---

[1] Defendants argue in a footnote that *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995), stands for the proposition that an entire case is time-barred if *any* named plaintiff had actual knowledge of the alleged breach more than three years before the complaint's filing. (Mot. 6–7 n.1.) This rather remarkable suggestion finds no support in *Landwehr* or any other case law of which the Court is aware. *See Browe v. CTC Corp.*, 15 F.4th 175, 191–92 (2d Cir. 2021) (discussing *Landwehr* and specifying that "[a]n individual participant's failure to act in a timely way on her knowledge of a fiduciary breach may prevent her from bringing suit but does not forever foreclose others from vindicating the rights of all who are affected by the breach").

12

**Westco Chemicals, Inc.**
**Retirement Plan**
**FYE 9-30-11**

**Ending Assets**

**Cash & Cash Funds:**

| | |
|---|---|
| Wells Fargo # ▓▓▓▓▓▓ | -2.19% |

**Certificates of Deposit:**

| | |
|---|---|
| Ally Bank CD 8-18-14 | 1.78% |
| Ally Bank CD 5-26-15 | 3.37% |
| American Exp Centurion Bk 4-2-12 | 2.93% |
| Bank of America 5-21-12 | 1.46% |
| Bank of Holland 6-12-12 | 2.92% |
| BMW Bank North America CD 9-23-14 | 2.91% |
| Colombus CD 2-22-12 | 5.84% |
| Colombus CD 4-9-12 | 5.85% |
| First Commercial 10-14-11 | 2.91% |
| First National Bank CD 11-18-13 | 7.31% |
| First Trust Int. Rate Hedge Series 20 Cash | 0.76% |
| GE Money Bank CD 11-7-11 | 1.46% |
| GE Money Bank 10-15-14 | 5.85% |
| Goldman Sachs Bank USA CD 6-10-13 | 5.90% |
| Goldman Sachs Bank USA CD 10-5-15 | 2.91% |
| Harris Nat'l Assn CD 4-15-19 | 4.67% |
| Heritage Bank Comm CD 1-31-14 | 1.78% |
| Hinsdale Bk CD 7-22-13 | 5.87% |
| Key Source Coml Bk 1-9-14 | 2.95% |
| Lake Forest 7-15-13 | 7.34% |
| Lakeside Bank 9-17-15 | 3.18% |
| Metlife Bank Nat'l Assn CD 10-21-13 | 2.28% |
| Metlife Bank Nat'l Assn CD 11-4-13 | 2.49% |
| Mizrahi Tafahot Bk CD 3-25-15 | 1.02% |
| Plainscap Bk CD 6-11-12 | 2.78% |
| Tennessee Comm Bk CD 4-17-15 | 3.46% |
| Tennessee Comm Bk. CD 6-30-15 | 0.87% |
| World Fin'l 4-15-12 | 5.84% |
| World Fin'l 9-21-15 | 2.91% |

**Participant Loans:** 0.58%

(Faucher Decl. ¶ 5 Ex. D ("Ibarra Participant Statement") 5, ECF No. 87-6.)

Defendants meet their initial burden on summary judgment by pointing out the undisputed fact that, by 2011, Mr. Ibarra had seen at least one participant statement

showing the Plan's assets were invested solely in cash or CDs. This provides sufficient evidence from which a jury could conclude that Ibarra was aware of how the Plan was invested.

In response, Plaintiffs submit a declaration from Ibarra in which Ibarra states that, while he did receive two participant statements, one in 2009 and one in 2011, he "do[es] not recall reading the documents when [he] received them." (Decl. Lorenzo Ibarra ISO Opp'n ("Ibarra Decl.") ¶ 3, ECF No. 89-3.) He further declares that these disclosures "did not suggest to [him] there was anything wrong with or anything to be concerned about regarding the Plan." (*Id.* ¶ 5.)

Ibarra's declaration fails to place in genuine dispute Defendants' showing that Ibarra knew in 2011 how the Plan was invested. While Ibarra does not recall reading the Statements, he clearly did read at least one of them, as indicated by paragraph five of his declaration and the undisputed fact that by 2011 he "had seen at least one participant statement showing the Plan's assets were invested in cash or CDs." (SUF 23.) Moreover, there is no evidence suggesting Ibarra was not able to read and comprehend the Statements. Instead, the evidence before the Court tends to indicate only the contrary. Ibarra declares he is able to read "some English," (Ibarra Decl. ¶ 4), and when shown a copy of the Participant Statement during this deposition, he confirmed he was able to read it. (Faucher Decl. ¶ 4 Ex. C ("Ibarra Dep.") 12:25–13:1, ECF No. 87-5 ("Q: Can you read this English document?" A: "Yes.").)

To the extent Ibarra's lack of memory contradicts the rest of the record, Plaintiffs nevertheless fail to demonstrate a genuine dispute of fact. Self-serving testimony that contradicts prior or concurrent testimony does not create a genuine factual dispute. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991))); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) ("[T]his deposition testimony flatly contradicts both her prior

sworn statements and the medical evidence. As such, we conclude her deposition testimony does not present 'a sufficient disagreement to require submission to a jury.'" (footnote omitted) (quoting *Anderson*, 477 U.S. at 251–52)). Thus, to the extent Ibarra's inability to recall reading the Participant Statement contradicts either (1) his testimony that the Participant Statement did not suggest to him that there was anything wrong with the Plan, (Ibarra Decl. ¶ 5), or (2) his concession that he "had seen" a Participant Statement "showing the Plan's assets were invested in cash or CDs," (SUF 23), the contradiction does not create a genuine factual dispute. *Van Asdale*, 577 F.3d at 998; *see Sulyma II*, 140 S. Ct. at 779 (instructing that if a plaintiff's denial of knowledge is "blatantly contradicted by the record," "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

                ii.      <u>As a matter of law, what Ibarra knew constitutes "actual knowledge"</u>

The Court next considers whether the undisputed fact of Ibarra's knowledge is sufficient to allow the Court to conclude that, as a matter of law, Ibarra had "actual knowledge" such that § 1113(2) was triggered. In *Sulyma I*, the Ninth Circuit considered at length the "actual knowledge" requirement of the ERISA three-year statute of limitations and noted that "actual knowledge" "mean[s] something between bare knowledge of the underlying transaction, which would trigger the limitations period before a plaintiff was aware he or she had reason to sue, and actual *legal* knowledge, which only a lawyer would normally possess." 909 F.3d at 1075 (emphasis added). Pursuant to *Sulyma I*, in a duty of prudence case, "the plaintiff must be aware [1] that the defendant has acted and [2] that those acts were imprudent." *Id.* Here, as discussed, the evidence shows that Ibarra read the 2011 Participant Statement, including its last page, which is a clear list of the portfolio's investments. This evidence establishes the first prong—that Ibarra knew that Defendants "ha[d] acted." *Sulyma I*, 909 F.3d at 1075.

15

The remaining issue, therefore, is whether Ibarra had knowledge that the Plan's investment strategy was imprudent. *Sulyma I*, 909 F.3d at 1075. On one hand, "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." *Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 957 (D.C. Cir. 1985); *Sulyma I*, 909 F.3d at 1075 (confirming the continued viability of this observation from *Fink*). On the other hand, the triggering of the three-year limitations period does not require that a plaintiff understand "that the facts establish a cognizable legal claim under ERISA." *In re Northrop*, 2015 WL 10433713, at *19 (quoting *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003); *Sulyma I*, 909 F.3d at 1075. The question here is whether Ibarra knew that the Plan's investment strategy was imprudent, keeping in mind that this standard is something less than understanding that he had a legal claim under ERISA.

The answer to this question is 'yes.' Plaintiffs themselves allege that a retirement investment portfolio consisting entirely of CDs is per se imprudent:

> The [Department of Labor] has stated in the preamble to regulations issued under the fiduciary rules of ERISA Section 404 that capital preservation funds, like certificates of deposit, were not appropriate long-term default investments because they would not produce returns that were equivalent to funds with greater exposure to equities and were less likely, therefore, to produce returns that would be needed to provide adequate income at retirement.

(FAC ¶ 62.) The conclusions of both parties' experts support this allegation; the experts agree that, between 2013 and 2018, the Plan suffered over $600,000 in losses as a result of the CDs-only investment strategy. (Opp'n 7; Decl. Michael C. McKay ISO Mot. Prelim. Settlement Approval ¶ 9, ECF No. 60-4 ("Plaintiffs' expert witness . . . opined that the class monetary damages were between $778,308 and $710,441 . . . . Defendants' expert . . . opined that class monetary damages were between $698,089 and $616,944 . . . .").) Additionally, the undisputed evidence indicates that "most if not all" of Westco's employees were dissatisfied with the Plan's

investment in CDs and that it was a "running joke" in the company. (SUF 18–19.) Moreover, one need not wait to see how CDs will perform; the yield on a CD is known from the start, and the passage of time is not required to understand that a CD is a low-risk, low-return investment vehicle. *Cf. Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982) ("[T]he holders of bank certificates of deposit are abundantly protected under the federal banking laws."). Under these facts, Defendants' CDs-only investment strategy was "inherently a statutory breach of fiduciary duty" from the outset. *Fink*, 772 F.2d at 957. Thus, under the facts of this case, no reasonable juror could find that Ibarra's knowledge of the fact of the CDs-only investment strategy *did not* equate to knowledge that the investment strategy was imprudent.

Ibarra's declaration, (Ibarra Decl. ¶¶ 3–6), does not alter this conclusion. Ibarra knew the Plan was invested in only CDs, and it was and is commonly known, both at Westco and in general, that such an investment strategy would not yield acceptable returns for Plan participants. Thus, Ibarra knew that the Plan's strategy was imprudent, and he cannot avoid this finding on the basis of "willful blindness" to what was obvious and clear to him. *See Sulyma II*, 140 S. Ct. at 779 (noting that evidence of "willful blindness" may properly support a finding of "actual knowledge").

When, Ibarra received and saw a Participant Statement, which happened no later than 2011, he had actual knowledge of Defendants' imprudent investments under 29 U.S.C. § 1113(2). Thus, the three-year limitations period began to run at that time, and expired at the latest in 2015. As Ibarra did not bring his duty of prudence claim until 2019, his claim is time-barred. Moreover, for the reasons discussed in the previous section in relation to Draney, Plaintiffs' allegations and arguments regarding continuing violations and the duty to monitor do not alter this conclusion. The Court therefore grants Defendants' Motion as to Ibarra's duty of prudence claim (Claim One) and dismisses Ibarra's claim with prejudice.

### B. Duty of Loyalty

Plaintiffs' second claim is for breach of the duty of loyalty that ERISA plan fiduciaries owe under 29 U.S.C. § 1104(a)(1)(B). (FAC ¶¶ 68–73.) "ERISA requires that plan fiduciaries . . . act 'solely in the interest of the participants and beneficiaries,' and 'for the exclusive purpose of . . . providing benefits to participants and their beneficiaries.'" *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1155 (N.D. Cal. 2022) (second alteration in original) (quoting 29 U.S.C. § 1104(a)(1)(A)), *appeal docketed*, No. 22-16268 (9th Cir. Aug. 22, 2022); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *4 (N.D. Cal. Aug. 29, 2016) (noting plan fiduciaries must act "with an eye single to the interests of the participants and [beneficiaries]" (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982))).

Plaintiffs' duty of loyalty claim is based on the same underlying wrong as the duty of prudence claim: maintaining the Plan's investments entirely in CDs. Plaintiffs allege that such action was disloyal because Defendants placed their own interests above those of the Plan's participants. (*See* FAC ¶ 70C (accusing Defendants of "[s]electing only certificates of deposit for the 401(k) Plan because Ezekiel and Steven Zwillinger personally want to invest only in certificates of deposit in part because they have other retirement resources and are not concerned about returns on the Plans' assets").)

Defendants meet their burden on summary judgment by arguing that the duty of loyalty claim, like the duty of prudence claim, is barred by ERISA's three-year statute of limitations, and by pointing to the evidence they submitted in connection with the duty of prudence claim. (Mot. 8.) Thus, to save the duty of loyalty claim from the same fate as the duty of prudence claim, Plaintiffs need to distinguish the former from the latter in some material way. But Plaintiffs point to no breaches of the duty of loyalty that could be viewed as separate and apart from the alleged breaches of the duty of prudence. (*See generally* Opp'n.) Thus, Plaintiffs fail to distinguish the two claims, and accordingly, any breaches of the duty of loyalty fall outside the limitations period

to the same extent as the breaches of the duty of prudence. Accordingly, the duty of loyalty claim is likewise time-barred by ERISA's three-year statute of limitations. *Cf. Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706, at *16 (N.D. Cal. Sept. 13, 2021) (dismissing claim for breach of the duty of loyalty where claim "hing[ed] entirely on breach of the duty of prudence allegations"). The Court therefore grants Defendants' Motion as to Draney's and Ibarra's duty of loyalty claim (Claim Two) and dismisses that claim with prejudice.

### C. Denial of Class Certification and Dismissal

Plaintiffs filed a Motion to Certify Class, which is fully briefed and under submission. (Mot. Certify Class, ECF No. 95; ECF No. 109 (taking matter under submission).) In the Motion to Certify Class, Draney and Ibarra propose themselves as Lead Plaintiffs. (*Id.*) However, as discussed above, Draney's and Ibarra's claims are time-barred, such that dismissal of their individual claims with prejudice is appropriate.

"When a defendant has obtained summary judgment against putative class plaintiffs, a motion for class certification becomes moot." *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018); *see Wu v. Sunrider Corp.*, No. 2:17-cv-04825-DSF (SSx), 2018 WL 2717863, at *1 (C.D. Cal. May 29, 2018) (denying class certification motion as moot after granting summary judgment on all of the named plaintiff's claims); *cf. Emp'rs-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 924 (9th Cir. 2007) ("[A] suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no class has been properly certified."). Accordingly, the Court denies Plaintiffs' Motion to Certify Class as moot and dismisses the remainder of the action, including by dismissing the class claims without prejudice.

///
///
///
///

1  ///
2  ///
3  ///
4  ///

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 87.) The Court **DISMISSES** the First Amended Complaint (1) **WITH PREJUDICE** as to Draney's and Ibarra's individual claims and (2) **WITHOUT PREJUDICE** as to the class claims. Plaintiffs' Motion to Certify Class is **DENIED AS MOOT**. (ECF No. 95.)

All dates and deadlines in this matter are **VACATED** and taken off calendar. The Court will issue Judgment.

**IT IS SO ORDERED.**

February 23, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**